## WILLIAM A. RANKIN *et al.*, APPELLANTS, *v.* NEW ENGLAND AND NEVADA SILVER MINING COMPANY *et als.*, RESPONDENTS.

INTERPRETATION OF CONTRACTS. If there is no ambiguity apparent in a contract, the words must be taken in their usual and ordinary signification, and the contract interpreted in accordance with grammatical rules.

THE SAME. Where the language employed in a contract is clear or free from ambiguity, the Courts are bound by it, and cannot look beyond it for motives and intentions not expressed.

CONTRACT BY AGENT IN HIS OWN NAME. A foreman of workmen employed in building a mill for a Company, not being furnished with certain necessary sticks of timber, wrote to a third person to procure them, and was answered that they would be furnished if he would guarantee the payment of the expense incurred in getting them ; and in reply ordered them, and added : " I will comply with your request as to pay :" *Held*, that the language used did not make a contract obligatory upon the Company.

AUTHORITY OF AGENT. No one can be held upon a contract executed by another as agent, until it is satisfactorily shown that he possessed the authority to act for the principal in that particular character of transaction.

EVIDENCE OF AGENCY. The mere fact that a person has held himself out as the agent of another and transacts business in his name, is no evidence of his agency, unless it be further shown that he does so with the knowledge of the principal.

PROOF OF AGENTS' AUTHORITY. Where it is sought to establish an agent's authority to do a particular act by proof of other acts done and recognized by the principal, such acts must either be of a character similar to that upon which it is sought to charge the principal or tend to establish a general power.

EXTENT OF AGENTS' POWER. The full power of a foreman to employ workmen for the construction of a mill and pay them for their services, does not include or imply the power to purchase lumber or enter into contracts respecting it.

RATIFICATION OF ACT OF UNAUTHORIZED AGENT. Where materials furnished under a contract with an unauthorized agent are used in the construction of a building, it must be shown that the owner of the building was cognizant of the transaction, before he can be held to have ratified the agent's act by the use of the materials.

APPEAL from the District Court of the Sixth Judicial District, Lander County.

The defendants, the " New England and Nevada Silver Mining Company," " Boston and Reese River Silver Mining Company," and " Silver Ledge Mining Company," were corporations organized in New York, and were engaged in erecting a quartz mill at Newark, in Lander County. Trefren was their managing agent, but

was absent much of the time, and had stated to the plaintiff Rankin that in his absence Griffin had charge, and when he had business to transact to go to him.    The saw-mill of Hendrie was thirty miles from Newark ; and the specific cañons from which the plaintiffs, Wm. A. Rankin and Thomas C. Nixon, were engaged by Hendrie to haul logs were within three miles of the saw-mill.    Big Cañon was six miles from the saw-mill, and the logs, procured there with much difficulty by the plaintiffs, had to be dragged that distance, half of which was an up-grade.    The amount sued for was eight hundred and fifty dollars, which the services were indisputably worth.

The other facts are stated in the opinion.

*Harry I. Thornton and D. Cooper,* for Appellants.

So far as the record shows, the defendants were engaged in no other business or pursuit than erecting the quartz mill at Newark. The uncontradicted testimony is, that Griffin was acting as General Superintendent of the work.    Is this not enough to establish his agency ?    If it be not, then no agency can be established in the absence of the written appointment.    If Griffin was General Superintendent of the work in the mill, was it not his province, his most peculiar province, to see to obtaining the necessary material to be used in its construction ?    Was not his act, in contracting for these timbers, without which the mill could not be completed, and the want of which had already caused the work to be stopped, most clearly within the scope of his duties as Superintendent ?    If it was not, what act would come within the scope of the duties of a Superintendent, a General Superintendent, of any work ?

There is another phase in which the case may be considered. Can it be possible that Courts of Justice will see such a door, as this would present, thrown open to defraud and entrap the public ? Can a corporation put a man ostensibly in charge of its business, hold him out to the world, by virtue of the position he occupies, as its agent or superintendent, allow him to go on and enter into contracts, allow them to be performed, receive all the benefits of their performance, and then turn round and say to those who have honestly

contracted and faithfully performed, when they seek compensation for their labor, service and expenditures : " This man was not our agent.   True, we have received the benefit of your labor, are now enjoying it ; but it's your mistake in treating with this man, simply because you found him in charge of our affairs."   To hold that the appellants here did not make out a case of agency in Griffin in the Court below, would result in precisely what I have suggested ; and no man would be safe in dealing with any supposed or actual agent until he had seen his actual authority to act.   It would place. a most serious restriction upon trade and commerce ; be the bane of every country where such a doctrine was permitted to obtain, and especially in those communities where large capital is necessary to the development of their wealth, and where corporations are a necessity.

Griffin was placed in charge of the defendants' property ; he occupied the public office of the defendants, and was thus publicly held out to the world to be their agent.   All this, and especially when taken with the declaration of Trefren, the Managing Agent of these Companies, to Rankin, that Griffin had charge of everything in his absence, accompanied by the direction to go to him when he had any business to do, was enough to establish the authority of Griffin ; as here was not merely an ostensible holding him out as an agent, but a declaration that he was so, and a direction to go to him as agent.   Can it be that this, coming from the General Agent, is insufficient to fix his authority ?   (Dunlap's Paley's Agency, (4th ed.) 162, note (1); 192, note (1); 200, 201, text and notes; 171 and note (o); 324, 198, 4 note (1), 273 ; *Anderson* v. *Coonly*, 21 Wend. 279 ; *Lightbody* v. *North American Ins. Co.*, 23 Wend. 22 ; Angel & Ames on Corporations, Secs. 284, 297, (5th ed.); 1 Parsons on Contracts, 41, 42, 43 and 44 ; 11 Vermont, 477 ; 4 Met. 529 ; Story on Agency, Sec. 61.)

But supposing that Griffin had no authority, were not the subsequent acts of the defendants, in receiving and using and now enjoying the benefits of the timber produced by their labor, a ratification of the act of Griffin in making the contract?   If it be claimed that Griffin exceeded his authority, because there existed a contract

with Hendrie to furnish lumber for the Newark mill, the claim, under the circumstances, is without force or reason. It was a matter of indifference whether there was a contract with Hendrie or not. He was not fulfilling it, if there were. Work had been stopped because the proper kind of timber was not being produced. (Parsons on Contracts, 45 to 47 ; *Rodgers* v. *Kneeland*, 10 Wend. 248.).

Another suggestion presents itself, namely : That there are necessities in the affairs of men and business that enlarge the scope of the duties of a servant or subordinate, and warrant him to do acts under one state of circumstances which he would not be justified in doing under others. Necessities arise in almost every business requiring prompt and decisive action, or perhaps irreparable loss. In such cases, it is the duty of the party in charge, however limited his authority, to act; and when he does act, his principal is bound. The law recognizes and reason approves this rule ; and we claim that the necessities of this case, even in the absence of any general authority, would not only have justified Griffin, but bound the defendants. (Dunlap's Paley's Agency, 170, note, and cases cited ; Story on Agency, Sec. 63.)

*Wren and Croyland*, for Respondents.

The only evidence of a contract is the letter from Rankin to Griffin, requesting him (Griffin) to guarantee payment for the extra labor of hauling the timber from Big Cañon, and the answer of Griffin that he would comply with his request as to pay. Parol evidence was not admissible to show that Griffin intended to contract for defendants. ( *Chase* v. *Savage S. M. Co.*, 2 Nev. 9; *Gillig, Mott & Co.* v. *Lake Bigler Road Co.*, 2 Nev. 214.) Griffin was superintendent of the construction of the mill, and had no authority to contract for materials for the construction of the mill, much less to modify a contract already made by Trefren, who had authority. It was not shown that Griffin had in any instance made a contract for materials, nor that he was held out by Trefren as having authority so to do.

The contract being unauthorized, did the defendants afterwards ratify it ? In order to do so, they must have been fully informed

of all the facts connected with the contract, and then must have acquiesced or remained silent for such a length of time as would have created the presumption that they approved of and ratified it, or they must have ratified it in clear and explicit language; or they must have received and retained the benefit of it. It will not be contended that they ratified it either by acquiescence or expressly; did they do so in the other manner? Trefren contracted with Hendrie to furnish all the lumber and timber necessary in the construction of defendants' mill, to be delivered at the mill at a stipulated price. Hendrie contracted with plaintiffs to haul the logs out of which the lumber and timbers were to be sawed, at his (Hendrie's) saw-mill, and after the lumber and timber was sawed, to deliver it at defendants' mill, in accordance with the contract between Hendrie and defendants. Hendrie was bound to furnish the timbers to defendants, and defendants were bound to receive them. All the benefit defendants received was indirect and only advanced the completion of their mill, and was of such a nature that they could not avoid receiving it. Hendrie was the party, if any one, directly benefited.

By the Court, LEWIS, J.

The defendants, who were erecting a quartz mill in the county of Lander, entered into a contract on the 10th day of March, A.D. 1867, with one Olen Hendrie, whereby for certain stipulated prices he agreed to deliver to them all the lumber and timber necessary for the purpose of completing the mill.

To further the fulfillment of this contract, Hendrie employed the plaintiffs to supply his saw-mill with the necessary logs, and also to haul the timber when sawed into the proper dimensions, to the site of the defendants' quartz mill. The defendants were in no wise connected with this arrangement, or contract between Hendrie and the plaintiffs. However, in a few days after the plaintiffs had commenced delivering the lumber to the defendant, G. P. Griffin, who seems to have been superintending the erection of the mill, wrote to the plaintiffs, informing them that there were thirty-nine sticks of timber ordered from Hendrie which had not been delivered, and that he was much in need of them, as the mill frame

could not be put up until they were received. This letter was answered by the plaintiff Rankin, who stated that the timbers needed were not to be had at the place where they were then engaged in cutting, and that he was not authorized by Mr. Hendrie to procure timber from any other locality; that he did not feel warranted in going to Big Cañon, where the timbers could be had, because it would be very expensive to Mr. Hendrie. The letter concludes with an offer to procure the sticks if Griffin would guarantee that the plaintiffs should be paid the extra expense incurred in getting them. It also appears from this letter that Hendrie was absent from the saw-mill at the time of this correspondence, and that the plaintiff Nixon was left in charge of his business, which probably accounts for Griffin's writing to the plaintiff Rankin, instead of Hendrie. In reply Griffin wrote the following letter:

" Go ahead with all possible speed in getting out the timbers. Put Horton and Hays on with you, and I will comply with your request as to pay."

The timbers were then procured and delivered at the proper place for the defendant; and this action is brought to recover the increased or extra expense incurred in getting them, which was proven to be about eight hundred dollars.

The plaintiffs were nonsuited, and judgment for costs rendered against them, from which they appeal to this Court.

The nonsuit was properly granted, and is sustainable upon two distinct grounds: First, upon the failure to show that Griffin entered into a contract on behalf of defendant; and, second, admitting him to have contracted on their behalf, it was not shown that he possessed the authority to bind them by any such contract.

Language, although not a perfect medium of thought or intention, is yet the most perfect which we possess. Whenever it is employed in any legal instrument it must be taken as the expression of the real intention or thought of the person using it. If there be no ambiguity apparent, the words must be taken in their usual and ordinary signification, and the context interpreted in accordance with grammatical rules. When, therefore, a person has clearly expressed one thing in his contract, no Court has the right to say that something else was intended. No doubt an expression

is often the very opposite of what is really intended, but that is a mishap which generally finds no remedy in the Courts.    When the language employed is clear, or free from ambiguity, the Courts are bound by it, and cannot look beyond it for motives and intentions not expressed.    To place the interpretation upon the correspondence between Griffin and the plaintiffs in this case, which counsel for appellants contend for, would be to ignore entirely the language employed by the parties, and to make an entirely new contract for them.

The plaintiffs write to Griffin that they would procure certain timbers if he would guarantee the payment of the extra expense. Griffin replies, "I will comply with your request as to pay."

The appellants did not ask the guarantee of the New England and Nevada Company, but simply for that of Griffin, and in his reply he does not pretend to represent any one but himself.    He does not say the New England and Nevada Company "will comply with your request as to pay," but I will do so.

We do not see how it is possible to interpret this language so as to make of it a contract obligatory upon the defendants.    If the plaintiffs desired the guaranty of the defendants they certainly did not ask for it.    Nor did Griffin by a single word indicate an intention to give it; hence these letters do not seem to warrant the construction placed upon them by counsel for appellants.    But admitting that they do, the failure to prove that Griffin had the authority to act for the defendants in such a transaction still remains an insuperable obstacle to the plaintiffs' right of recovery. No man can be held upon a contract executed by another as agent until it is satisfactorily shown that he possessed the authority to act for the principal in that particular character of transaction.    If it be shown that he is intrusted with general powers, he has all the implied powers which are within the scope of the employment; but if his powers are special and limited, the principal is not bound by any acts of the agent not strictly within the authority expressly conferred upon him.    And the mere fact that a person has held himself out as the agent of another, and transacted business in his name, is no evidence of his agency unless it be further shown that he did so with the knowledge of the principal.

When, therefore, no express power of attorney is proven, but it is sought to establish the agent's authority to do a particular act by proof of other acts done and recognized by the principal, such acts must either be of a character similar to that upon which it is sought to charge the principal, or tend to establish a general power. To illustrate : If the personal property of a person be sold by one claiming to act as the agent of the owner, and it becomes necessary to establish his power to do so, it might be done by proof, either of express authority or of other sales which had been recognized by the owner ; but that he had at some time previous executed a promissory note as the agent of such owner, who had approved the act and paid the note, would be no evidence whatever of his right or authority to sell property. If such a great variety of acts can be shown as would reasonably lead to the belief that the agent is invested with general powers, it may be admissible to do so. But a few acts, and those, too, naturally belonging to one particular branch or character of business, would be no evidence whatever of the power to act beyond the scope of business to which such acts are naturally connected. In this case the plaintiffs sought to establish Griffin's authority to enter into the contract sued on, on behalf of the defendants, by evidence that he employed men in the construction of the defendants' mill and paid them for services so rendered ; that he acted as foreman of the work on the mill, and in the absence of the managing agent acted as Superintendent.

This certainly does not tend to establish the authority claimed for Griffin, for he may have had full power to employ workmen at the mill and to pay them for their services without possessing any authority whatever to purchase lumber, or to enter into contracts respecting it, on behalf of the defendants. As foreman at the mill he would not necessarily possess such power or right; at least, in the absence of proof, it cannot be presumed-that he did. The employment of men, the payment of their wages, and the management of affairs about the mill, were the only duties which, as foreman, seem to have been imposed upon him. That as foreman he had a right to contract on behalf of the defendants for timber is not in anywise shown.

The evidence that he employed or paid the workmen on the mill

tended no more to establish his right to enter into a contract, like the one here involved, than the proof of the execution of the note would tend to establish the right to sell the property in the case supposed.

Admitting Trefren's authority to enter into a contract of this character on behalf of the defendants, and his right to delegate such power to another, still we have no evidence in the record that such power ever was given to Griffin by Trefren. The only testimony in any way bearing in that direction is the general statement of one or two witnesses that Griffin acted as Superintendent whilst Trefren was absent. By what authority he acted as such does not appear, or what authority was conferred upon him is nowhere shown. One of the witnesses also testified that one Cox acted in Trefren's place whilst he was absent. Whether either of them acted for Trefren by his authority does not appear to have been proven.

It is argued, however, that by the acceptance and use of the timber by the defendants they ratified the act of Griffin and are, therefore, liable for the extra cost of the lumber. But the answer to this position is, it was not shown that the defendants were cognizant of the transaction before the timbers were used. There could be no ratification by them without a full knowledge of the transaction, and after the timbers were used it was out of their power to return them. They had contracted with Hendrie for the same kind of timbers, and if delivered by him in accordance with his contract they would be liable to him for their contract price.

The evidence taken together would not support a verdict for the plaintiffs. The nonsuit was therefore properly granted.

Judgment affirmed.

JOHNSON, J.

I think it is very clear from the showing made that the contract relied on was entered into by Griffin on his own behalf, and not for defendants. And upon this feature of the case I concur in the reasoning and conclusions attained in the opinion of Justice Lewis.

Upon the second point, as to the authority of Griffin to contract for the company, I do not understand the testimony to be of the

limited character given to it by my associate, and therefore perhaps draw different conclusions from the testimony as I gather it from the record. But as the first point must determine this appeal, it is not material now to inquire as to the facts shown at the trial and bearing on either of the other points made by counsel. Therefore I join in the order of affirmance.