The Louisville, Evansville and St. Louis Railway Company v. McVay.

---

No. 11,386.

THE LOUISVILLE, EVANSVILLE AND ST. LOUIS RAILWAY COMPANY v. McVAY.

RAILROAD.—*Board of Directors.*—In a strictly legal sense, the board of directors of a railroad corporation are the agents and representatives of the corporation. In a practical sense, the board of directors becomes the corporation itself, so far, at least, as its relations to the public are concerned.

SAME.— *Authority of Agents, Officers and Employees.*—Whatever authority agents, officers and employees have they derive from the board of directors, or governing power, unless conferred by the charter of the corporation.

SAME.—*Authority to Contract.*—Before the corporation will be bound by the contracts of such agents, officers or employees, unless authority is conferred by the charter, it must be shown that authority to so contract has been given by the board of directors, or governing body, either expressly, impliedly, or by ratification.

SAME.— *When Corporation Bound by Contracts of Agents.*—The corporation will be bound by the contracts of its agents, officers and employees within the line and scope of the agency, office or employment.

SAME.—*Evidence.—Presumption.*—The duties of such agents, officers and employees must in general be shown. When shown, the authority to contract within the line of such agency, office or employment will be presumed.

SAME.—*Contract of Road-Master for Services to Person Injured.—Judicial Knowledge.—Presumption.*—Courts can not judicially know, or presume, without further proof of the duties and powers of a "road-master" than what the term indicates, that such an employee has authority to bind the corporation by a contract with a third party for nursing a person injured upon the line of the railway.

SAME.—*Contract without Authority.—Ratification.*—A contract by an agent, etc., without authority, may be ratified by the corporation, so as to become binding upon it.

The Louisville, Evansville and St. Louis Railway Company *v.* McVay.

SAME.—*Contract for Services to Person Injured.*—*General Manager.*—*Presumption.*—The courts will presume from the ordinary meaning of the term " general manager," that such an officer has the general direction and control of the affairs of the corporation, and authority to bind it by contracts for nursing, etc., of persons injured on the line of the railway.

SAME.—*Ratification of Contract.*—The general manager having authority to thus contract, the corporation will be held liable by his ratification of such a contract made by the road-master.

From the Floyd Circuit Court.

*A. Dowling,* for appellant.

*J. V. Kelso,* for appellee.

ZOLLARS, C. J.—The only question in this case is as to the sufficiency of the evidence to sustain the finding and judgment of the court below against the appellant. The substance of the evidence is as follows: In 1882, one John Barnett was badly injured and mangled at a tunnel on the line of appellant's railway. He was removed to a hotel and appellee was employed by a Mr. Seemans, one of appellant's road-masters, to nurse and care for him. In pursuance of that employment, appellee performed the service for some eighty days. After he had been 'thus employed for some seventy days, he was authoritatively notified that the road-master had ordered his wages reduced to $1.50 per day. A few days subsequent he was notified that the road-master had ordered his discharge, and that the discharge would bring the pay for the services rendered. After he had rendered about sixty days of service under the employment, he presented his bill to Mr. Snyder, the general manager of the company, who after having asked who employed him, said that he would inquire about the matter, and see Mr. Seemans, the road-master. Subsequent to this, Mr. Seemans asked appellee to reduce his bill to $1.50 per day, and promised that if he did so he, Seemans, would make it all right. At about the time appellee was employed, the same road-master employed a physician, who attended the wounded man during the time appellee acted as nurse, and was paid for such attendance by appel-

The Louisville, Evansville and St. Louis Railway Company *v.* McVay.

lant, the railway company. Another nurse whom the physician employed, through appellee, and whose time appellee kept and reported to the company, was paid at the general office of the company in Louisville. Appellee got medicines for the wounded man from the druggist, who was paid for the same by the company. After the services were rendered by appellee, his attorney wrote to the general manager of appellant and received the following answer:

"LOUISVILLE, KY., Jan. 5th, 1883.

"*J. V. Kelso, Esq., New Albany:*

"DEAR SIR: Your yesterday's favor, with enclosure, at hand. Mr. Peter McVay, I think, was employed as nurse at the rate of $1.25 per day, and at this rate I am willing to pay him for services actually rendered up to the time that he was relieved by our road-master; am willing to pay him no more. If Mr. McVay wishes to bring suit, I have no means of preventing him from so doing. The endorsement of C. N. Nutt, as attending surgeon, I don't think adds to the strength of the bill, as Mr. Nutt was not employed by this company.

"Yours, truly, WM. SNYDER, General Manager."

It will be observed that there is no evidence here of any authority on the part of the road-master to make the contract for the nursing. If such authority may not be inferred from the title "road-master" there is nothing to show that he had authority to bind the corporation. In a strictly legal sense, the board of directors of a railway company are the agents and representatives of the corporation. In a practical sense, the board of directors become the corporation itself, so far at least as its relations to the public are concerned. Pierce Railroads, pp. 24 and 32, and cases cited; Ang. & A. Corp., secs. 239, 280, 299; *Columbus, etc., R. W. Co.* v. *Arnold*, 31 Ind. 174.

Whatever authority any agents, officers or employees may have they must have derived from the board of directors, or governing body, unless conferred by the charter of the corporation. Before the corporation will be bound by the contracts of such agents, officers or employees, unless authority

394    SUPREME COURT OF INDIANA,

The Louisville, Evansville and St. Louis Railway Company v. McVay.

is conferred by the charter, it must be shown that authority to so contract has been given by the board of directors or governing body, either expressly, impliedly or by ratification. Section 3897, R. S. 1881; *Brooklyn Gravel Road Co.* v. *Slaughter*, 33 Ind. 185; Pierce Railroads, p. 34, and cases cited; *Adriance* v. *Roome*, 52 Barb. 399.

It is well settled that the corporation will be bound by the acts and omissions of its agents, officers and employees within the line and scope of the agency, office or employment, and that when such acts or omissions are shown to have been within the line and scope of the agency, office or employment, no further evidence of authority will be required to bind the corporation. Such authority, in such cases, will be presumed from the nature of the duties imposed upon the agent, officer or employee. But, in order that this presumption may be indulged, it must in some way be known what these duties are. *Pittsburgh, etc., R. W. Co.* v. *Ruby*, 38 Ind. 294 (10 Am. R. 111); *Ohio, etc., R. W. Co.* v. *Collarn*, 73 Ind. 261 (38 Am. R. 134); *Lafayette, etc., R. R. Co.* v. *Ehman*, 30 Ind. 83; *Williams* v. *Cammack*, 27 Miss. 209; Pierce Railroads, 277.

Whether or not the courts may, in any case, presume authority on the part of these several subordinates to bind the corporation in the manner they may have undertaken to do, or take judicial notice of the authority from the title given to the agent, officer or employee, we shall have occasion to determine hereafter.

It is very clear, upon authority and reason, that there is nothing in the ordinary meaning of the term "road-master" from which the courts may know or presume that such employee has authority to bind the company for attendance and nursing of a person injured upon the line of the railroad, whether such person, when injured, be an employee, passenger, or a person sustaining no relation to the corporation. And could the courts judicially know that the road-master is a person having charge of the repairs of the road, still they could not judicially know, or presume from this, that he has

authority to bind the corporation for the nursing of persons injured upon the road, whether by trains or otherwise. *City of Lafayette* v. *James*, 92 Ind. 240 (47 Am. R. 140).

The case of *Tucker* v. *St. Louis, etc., R. W. Co.*, 54 Mo. 177, was an action by a physician against the company to recover for surgical and medical treatment of a brakeman injured while on duty. He was employed by the section agent and the conductor of the train. It was held that he could not recover. After stating that there was no evidence that they had any authority to employ the physician on the corporation's account, the court said: "It is only shown that they were agents of defendant in conducting its railroad business, which of itself could certainly give them no authority to employ physicians, for the defendant, to attend to, and treat, persons accidentally injured on the road."

The case of *Brown* v. *Missouri, etc., R. W. Co.*, 67 Mo. 122, was an action for drugs to a woman who had been hurt by one of the company's trains. They were furnished upon orders given by a division superintendent. The court said: "No proof was offered as to the duties of such officer, and the courts can not take judicial notice of them." For want of such proof the judgment was reversed.

In the case of *Mayberry* v. *Chicago, etc., R. R. Co.*, 75 Mo. 492, it was held that the fact that a physician in the service of a railroad company is authorized to buy medicines on the credit of the company, does not imply a power to bind the company by a contract for board, lodging, attendance and nursing of a brakeman injured on one of the company's trains.

In the case of *Rankin* v. *New England, etc., Silver Mining Co.*, 4 Nev. 78, it was held that "No one can be held upon a contract executed by another as agent, until it is satisfactorily shown that he possessed the authority to act for the principal in that particular character of transaction," and hence, that the full power of a foreman to employ workmen for the construction of a mill, and pay them for their services, does not in-

clude or imply the power to purchase lumber or enter into contracts respecting it.

The case of *Marquette, etc., R. R. Co.* v. *Taft*, 28 Mich. 289, was an action by a surgeon against the company for services rendered an employee who was injured while on duty. He was employed by the superintendent and the yard-master who had charge of the business and men in the yard, where the employee was engaged when injured, and who had the right to employ men for all purposes they were required for in the yard, and to discharge them. While the court divided as to the authority of the superintendent, the judges all agreed that under the evidence, the yard-master had no authority to bind the company by the employment of the surgeon. The court said: "There is certainly nothing in the evidence respecting the business required of Theil (yard-master), or in his position in the company's service, which suggests his possession of authority to bind by contracts for professional services. He was a mere yard-master, charged with local and very circumscribed duties, and those duties do not appear to have had any connection with the employment of professional assistance for the company." Two of the judges held that without proof of authority on the part of the superintendent, other than that furnished by his title simply, the company was not bound by his employment of the surgeon.

The case of *Cox* v. *Midland, etc., R. W. Co.*, 3 Exch. 268, cited in Wood on Master and Servant, at page 506, section 262, was an action by a physician against the company to recover for attendance upon a person injured by the company's employees. The physician was employed by a station master, who acted as the chief officer of the passenger and other departments. It was held that the company was not liable. PARKE, B., delivering the opinion of the court, after giving several illustrations to show that the company was not liable, said: "The employer of an agent for a particular purpose gives only the authority necessary for that agency under ordinary circumstances."

In the case of *Atlantic, etc., R. R. Co.* v. *Reisner*, 18 Kan. 458, it was said: " The authorities cited sustain the proposition that a station agent of a railroad company is not authorized, by virtue of his position as such agent, to employ a hotel-keeper, at the expense of the company, to attend to one of its brakemen, injured while working for the company, nor to furnish such employees with board and lodging while disabled." The same doctrine is fully recognized in the following cases: *Toledo, etc., R. W. Co.* v. *Rodrigues*, 47 Ill. 188; *Toledo, etc., R. W. Co.* v. *Prince*, 50 Ill. 26; *Cairo, etc., R. R. Co.* v. *Mahoney*, 82 Ill. 73; *Pacific R. R. Co.* v. *Thomas*, 19 Kan. 256; *Atchison, etc., R. R. Co.* v. *Reecher*, 24 Kan. 228; S. C., 1 Am. & E. R. R. Cas. 343. See, also, 1 Rorer Railroads, p. 666.

Many more cases to the same effect might be cited. We know of no authority to the contrary, and think none can be found that would hold the company liable upon the contract alone of the road-master, under the circumstances of this case. As there is nothing before us to show that the contract made with appellee by the road-master was within the line of his employment, or that he had authority to represent or bind the corporation by such a contract, we must hold that the corporation is not bound by it, unless it was recognized and ratified by the corporation. That a contract which an agent has no authority to make may be ratified by the corporation, so as to become binding upon it, is well settled by the authorities. If the general manager in this instance had authority to represent and bind the corporation by such contracts, he had authority to ratify the contract made by the road-master. If he had such authority, the evidence here is ample to show that the contract by the road-master was ratified, and thus became obligatory upon the corporation. Here we meet the most important and difficult question in the case. There is evidence sufficient to show that Mr. Snyder was the general manager of appellant, the railway company; but direct evidence that, as general manager, he had authority to bind the com-

pany by such a contract, is wanting. The fact that the druggist, physician and one of the nurses were paid by the company, is some evidence of his authority as to the contracts with them, but it is hardly sufficient, of itself, upon which to base a recovery in favor of appellee. As there is no direct evidence of such authority having been delegated to the general manager by the corporation, so there is no direct evidence as to what his duties as general manager were, from which his authority might be inferred. Can we presume, from the title " general manager," that the duties and powers of the general manager were sufficiently comprehensive to include contracts for the nursing of a person wounded upon appellant's road ? The term " general manager " of a corporation, according to the ordinary meaning of the term, indicates one who has the general direction and control of the affairs of the corporation, as contradistinguished from one who may have the management of some particular branch of the business. There is no class of business of anything like the magnitude of the railroad business of to-day, that is so open to common observation, and of which the general public know so much. The terms road-master, section boss, conductor, station agent, superintendent and general manager, are terms familiar to the whole people, and the public has, in the main, a correct understanding of the ordinary duties of these several classes of officers, agents and employees, and that their duties and powers are limited to the keeping up of the road, rolling stock, etc., and operating the road in the transportation of freight and passengers. We should have to shut our eyes to the most common observation to hold that the courts will not presume that the " general manager " of a railway has authority to bind the corporation by contracts for medical and other services to an injured employee, passenger, or other person wounded on the road by any agency of the company.

Different section bosses or road-masters may have different duties imposed upon them, and be clothed with different powers, by different corporations. The same, probably, may

be said of superintendents. Possibly the same may be said of " general managers," but this term indicates a general control and direction of all matters connected with the operation of the road, and until the contrary is shown, the presumption ought to be indulged by the courts that such an officer has authority to care for the wounded persons above mentioned. In many cases it would be difficult to have action by the board of directors; and in many cases, if prompt and efficient measures were not adopted, the corporation might be subjected to additional damages. It has been held that the courts will take notice of the duties and powers of cashiers of banks. *Farmers, etc., Bank* v. *Troy City Bank,* 1 Doug. (Mich.) 457.

In the case of *Sturges* v. *Bank of Circleville,* 11 Ohio St. 153, the court said: " It is not claimed that the respective duties of the board of directors, president and cashier, in the exercise of the franchises of the bank, are prescribed by the charter. So far, therefore, as the limitation of the appropriate duties of the cashier depend upon his office, we can only have respect to the ordinary and well understood duties of that officer in determining his powers. A cashier is defined to be one who has charge of money, or who superintends the books, payments, and receipts of a bank or moneyed institution. His actual powers and duties, like those of all other agents, may be more or less qualified, restricted or enlarged by the corporation, institution or party for whom he acts. But in this case, there being nothing to show any restriction or qualification of his powers in that regard, the duties of the cashier may reasonably be understood to extend to the buying and selling, and negotiating bills of exchange, checks and promissory notes, as well as to that of borrowing money, as the agent of the bank," etc. These cases were cited approvingly in the case of *Tousey* v. *Taw,* 19 Ind. 212. If the courts may thus take notice of the duties and powers of cashiers of banks, we can think of no reason why they should not presume, from the title, that general managers of railways

have power and authority to bind the corporation by a contract such as that under discussion.

In the case of *New Albany, etc., R. R. Co.* v. *Haskell*, 11 Ind. 301, it was held that the corporation was liable upon a contract for fencing the road, made by a general superintendent of the corporation. There seems to have been no evidence of his duties other than could be inferred from the title general superintendent. The court said: "He was the general superintendent of the road, and, of course, the general agent of the company, and, as such, it may be fairly presumed that he was clothed with authority to bind his principal in contracts relative to the safe and effective operations of the road. Railroad companies, in all cases, contract through their agents. The law makes it their interest to fence their track. * * * And upon whom, more than such general agent, would the duty of making a contract similar to the one in suit appropriately rest? In the absence of conflicting evidence, we are not allowed to avoid the conclusion, that the agent, in this instance, acted within the scope of his authority." We have many cases of what may be presumed by the courts, and of what they will take notice without proof.

The following are not directly in point upon the exact question under examination, but they are analogous, and serve to throw light upon it: *Carmon* v. *State*, 18 Ind. 450; *Ward* v. *Colyhan*, 30 Ind. 395; *Manning* v. *Gasharie*, 27 Ind. 399; *Hipes* v. *Cochran*, 13 Ind. 175; *Indianapolis, etc., R. R. Co.* v. *Stephens*, 28 Ind. 429; *Indianapolis, etc., R. R. Co.* v. *Case*, 15 Ind. 42; *Ross* v. *Boswell*, 60 Ind. 235; *Abshire* v. *Mather*, 27 Ind. 381; *Abel* v. *Alexander*, 45 Ind. 523 (15 Am. R. 270); *Eagan* v. *State*, 53 Ind. 162; *Schlicht* v. *State*, 56 Ind. 173; *Wiles* v. *State*, 33 Ind. 206; *State* v. *Swift*, 69 Ind. 505; *Board, etc.*, v. *May*, 67 Ind. 562; *United States Ex. Co.* v. *Keefer*, 59 Ind. 263; *Buell* v. *State*, 72 Ind. 523; *Terre Haute, etc., R. R. Co.* v. *Pierce*, 95 Ind. 496; *Stout* v. *State*, 96 Ind. 407; *Myers* v. *State*, 93 Ind. 251.

In the case of *Atlantic, etc., R. R. Co.* v. *Reisner*, *supra*,

without proof of the duties and powers of the *general agent,* the company was held liable upon his contract with a hotel-keeper for board and attendance to a brakeman, injured while working for the company. It was said: " In the case of a general agency, the principal holds out the agent to the public as having unlimited authority as to all his business. When the witness testified that Hyde was the general agent of the road at Atchison, he thereby gave evidence that the railroad company held out to the public such person as its agent in *all* its business and employment. In other words, the general agent of the company is virtually the corporation itself. * * General manager, and general agent, are synonymous terms." The same doctrine was held in the case of *Atchison, etc., R. R. Co.* v. *Reecher, supra.*

The case of *Toledo, etc., R. W. Co.* v. *Rodrigues, supra,* was an action to recover for nursing an injured employee. The nurse was employed by the local station agent, who, by letter, notified the general superintendent of the road of the employment. To this letter there was no answer, nor was the employment otherwise disapproved. When the bill was presented the general superintendent said that he would pay reasonable charges, and based his objection only upon the amount of the bill. It was held that this amounted to a ratification of the contract by the agent, and bound the company. In speaking of the general superintendent, the court said: " As his title implies, he has a general superintendence of the business affairs of the road, and we deem it but a reasonable inference to conclude that this was within the scope of these powers, and that when exercised, the company must be held liable." Because the regulations are not open to the public, it would be unreasonable to require positive proof of such authority.

The case of *Terre Haute, etc., R. R. Co.* v. *Pierce, supra,* was an action by a surgeon to recover for amputating the leg of an employee, injured while at work for the company. The facts of the employment and report to the general superintendent

were almost identical with the case last above. It was held that the company was liable, upon the ground of ratification. There was no proof of the duties or powers of the general superintendent. The court seems to have presumed from the title of his office, that he had authority to bind the company for such surgical services.

The case of *Indianapolis, etc., R. R. Co.* v. *Morris,* 67 Ill. 295, was similar, except that the action was to recover for nursing and care, and the employment was by the conductor, who reported to the general officers. It was held that there was a ratification of the employment, and that the company was liable.

Under a similar state of facts, a like ruling was made in the case of *Cairo & St. Louis R. R. Co.* v. *Mahoney,* 82 Ill. 73. In the case of *Pacific R. R. Co.* v. *Thomas,* 19 Kan. 256, it was held that, in the absence of evidence to the contrary, it should be presumed that the general superintendent of a railway has authority to employ physicians and surgeons to attend an employee injured while working for the company, and hence power to ratify an employment by agents, who had no such authority. This case went further than we need go here, and announced a proposition that we need not now approve or disapprove, viz., that the same presumption should be indulged as to a division superintendent, upon whose division the injury occurred. The company was held liable upon the ground that the employment was ratified by the superintendent. The evidence of ratification was much weaker than in the case before us.

The doctrine of the above cases is fully sustained by the case of *Southgate* v. *Atlantic, etc., R. R. Co.,* 61 Mo. 89, and the case of *American Ins. Co.* v. *Oakley,* 9 Paige, 496, therein cited. Upon the general doctrine of what the courts take notice without proof, see Best Evidence, vol. 1, sec. 253, Wharton Evidence, vol. 1, sec. 330, *et seq.,* and cases cited.

Applying the doctrine of the above authorities to the case before us, it must be held that the general manager had au--

thority to make the contract with appellee, and hence author- ity to ratify the contract as made by the road-master; and that he did so ratify it and thus made the corporation liable. There is no evidence as to how Barnett was injured; but inasmuch as the general manager ratified contracts for taking care of him, and the company paid for such service (except the claim of appellee), it should be presumed—there being no evidence to the contrary—that the injury was so inflicted as that the contract for his care was not *ultra vires*. See *Board, etc.,* v. *Slatter,* 52 Ind. 171; *City of Anderson* v. *O'Conner, ante,* p. 168.

There is nothing in the evidence that would justify us in reversing the judgment because of an excessive recovery.

We have given to the questions involved in this case a thor- ough and extended examination, not on account of the amount involved, but on account of the importance of the questions. As we find no available error in the record, the judgment is affirmed with costs.

