THE PENINSULAR RAILROAD COMPANY, APPELLANT, VS. THOMAS P. GARY, APPELLEE.

1. A roadmaster of a railroad company, or a conductor on a train, are not so far agents of the railroad company as to be legally authorized to employ physicians or surgeons to attend upon an employee who is injured by the cars of the company, unless they are specifically charged with that duty.

2. The conductor's direction to the physician or surgeon to extend such medical aid, or his promise that the same when rendered shall be paid for by the company, do not render such company liable for the same, unless there is proof that he is authorized so to do.

3. A contract by a roadmaster, conductor or other agent without authority, may be ratified by the corporation, and so become binding upon it.

4. The action of the General Manager may, by his ratification of such contract made by a subordinate agent, render the corporation liable thereon.

Appeal from the Circuit Court for Marion county.

The facts of the case are stated in the opinion.

*John G. Reardon* for Appellant.

*S. D. McConnell* for Appellee.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court:

In February, A. D. 1882, Thomas P. Gary, by his attorney, sued the Peninsular Railroad Company to recover the sum of one hundred and sixty-five dollars, on account for services rendered and medicines furnished to White Spate, as a physician and surgeon, at the instance and request of the defendant, in the county of Marion. A demurrer was filed by the defendant to the declaration, which was overruled by the court, and a plea was interposed of the general issue. In June, 1885, on the application and consent of the attorneys of both the parties, the cause was referred under the statute to Richard McConathy, a practicing attorney of the court, to hear said cause and for final determination thereof, and with power to render judgment therein according to the statutes. On the 27th of July, 1885, the referee filed his report and findings. He found for the plaintiff, Thomas P. Gary, in the sum of one hundred and sixty-five dollars, with interest thereon at the rate of eight per cent. per annum from the 13th day of January, 1882, until paid, with costs. The defendant's attorney then moved the said referee for a new trial on the following grounds:

1st. Because the finding and judgment is contrary to law.

2d. Because the statement of the evidence used on said reference does not support said findings and judgment, and because they are contrary to the evidence.

3d. Because the judgment is for a larger sum than is sued for and for a larger amount than is proven.

On the 29th of July, 1885, this motion was heard by the referee, who made the following order: "It is ordered that the plaintiff be required to remit $30 of the judgment herein on or before the 30th of July, 1885, else a new trial will be granted." On the 30th of July the plaintiff remitted thirty dollars of the principal and interest on said thirty dollars of the judgment, and the referee overruled the motion for a new trial. The defendant excepted to this ruling of the court, and brings his appeal, assigning the following errors :

1st. That referee erred in deciding that there was sufficient evidence on the part of the appellee to prove that the appellant had employed him and undertaken to pay him for the surgical attention to White Spate.

2d. The referee erred in finding that any authorized agent of the appellant had employed in its behalf the appellee or contracted with him to perform the surgical services in question.

3d. The referee erred in deciding that the appellant was bound to pay the appellee for the services in question upon the employment of appellee by either Redd, the roadmaster, or Jolly, the conductor of the appellant.

4th. The referee erred in finding that White Spate was wounded while in discharge of a duty to appellant.

5th. The referee erred in finding that the " statement of the evidence " operated as an admission of facts therein set forth and in not finding that said statement only stated the testimony as given by the different witnesses.

6th. The referee erred in finding that Redd, the road-master, had authorized the employment of appellee.

7th. The referee erred in finding that Jolly, the conductor, had employed appellee.

The referee's finding and report, as it appears in the record, is as follows:

"Thomas P. Gary, Plaintiff, vs. Peninsular Railroad Company, Defendant.

"This action this day coming on for trial, came the parties by their respective attorneys, and thereupon the parties filed a statement of the evidence to be considered herein, which statement is now filed marked 'A' No. 1, which statement contains all the evidence heard on the trial. And this action being heard on the evidence, and the argument of counsel, and the referee being advised, delivered a written opinion herein which is now filed. Thereupon the referee finds that the law and the proof herein is for the plaintiff. It is therefore adjudged that the plaintiff, Thomas P. Gary, recover of defendant, Peninsular Railroad Company, the sum of one hundred and sixty-five dollars, with interest thereon at the rate of eight per centum per annum from the 13th day of January, 1882, until paid, and his costs therein expended, to be taxed by the court.

"RICHARD McCONATHY, Referee.

"July 22, 1885."

The statement of evidence referred to in the finding as marked "A" No. 1, is as follows:

"Thomas P. Gary vs. The Peninsular Railroad Company.

"It is agreed by counsel for the plaintiff and defendant that the following is a true statement of the evidence in the above stated cause, and we do hereby consent to waive the examination of the witnesses, and use this statement in

evidence on the trial of said cause as all the evidence therein.

"On August the 31st, 1881, one White Spate, who was an employee of the defendant, and working on defendant's railroad, was injured by being run over by one of defendant's trains while he was in discharge of his duty. Redd, who was a roadmaster upon defendant's railroad, who had charge of the squad in which Spate was working, obtained transportation for Spate on a train of which James Jolly was then conductor, and instructed Jolly to carry him to the plaintiff, at Ocala, for surgical treatment, the plaintiff being a practicing physician and surgeon, residing at Ocala, with his diploma on file in the Clerk's office of the Clerk of the Circuit Court. Jolly carried the wounded man to Ocala and sent for plaintiff, and told the plaintiff what Redd had ordered him to do with the man, and he requested plaintiff to give him the necessary surgical attention. Plaintiff asked Jolly who would pay his fees. Jolly stated that the defendant would pay, and that he was authorized to employ plaintiff. The plaintiff then examined Spate and found his leg badly mashed, and that the injury was such as to render amputation necessary in order to save the life of the patient. Plaintiff then amputated the leg of the patient and treated him for fourteen days, until he recovered, and paid out for medicines and bandages used for the benefit of the patient, and necessary to the successful management of the case, the sum of twenty-five dollars. The bill rendered by the plaintiff against the defendant for surgical and medical treatment rendered and money paid out for the patient in the treatment of the case, was $145.00, which is proven to be a reasonable charge for the services rendered. There is a controversy as to the employment of the plaintiff by Redd, the roadmaster. There is no controversy about James

Jolly, the conductor, upon defendant's road, having employed the plaintiff, or as to the performance of the service by the plaintiff, or as to the reasonableness of the bill rendered and here sued on. The defendant denies the authority of the roadmaster and conductor to employ the plaintiff so as to bind the defendant and render it liable for the debt sued on.

" March 26, 1884.

(Signed)          " S. D. McConnell,
                ·"Miller & Spencer,
                   " Plaintiff's Attorneys.
                " Scott & Reardon,
                  " Defendant's Attorneys."

There is but one question in this case to be considered, and that is, is the defendant bound by the acts of the roadmaster, Redd, or the conductor, Jolly, in the employment of the plaintiff as surgeon for Spate? There is no proof that the company, by its General Manager, or otherwise, ever directly or indirectly ratified in any manner the action of Redd or Jolly, or that they, or either of them, had any authority to employ a physician or surgeon in such cases, and make such action binding upon the company. Their duties as roadmaster and conductor did not necessarily involve any such authority. In Rorer on Railroads, Vol. 1, 666, it is said that "a yardmaster of a railroad company is *not* so far the agent of the company as to be legally authorized to employ a physician to attend to one of the employees under his charge who is injured by the cars of the company. But it is held that the General Superintendent possesses such power, and power also to employ an attorney. Nor has a station agent of a railroad company, merely as such, authority to commit the company to liability by orders or contracts given or made outside the business of his office or matters coming within the

line of his duties. And his sending for a surgeon to treat an employe of the company, who is injured in the course of his employment, will not in itself render the company liable to pay the medical bill for such treatment. Nor will the conductor's direction to the surgeon to extend the medical aid, or his promise that the same when rendered shall be paid for, render the company liable to pay for the same. Such acts not being within the business employment of these servants or agents, the company are not bound thereby."

The acts of these agents of the company in the employment of the surgeon should have been ratified by the company through its General Manager or Superintendent, or the authority to make such employment should have in some way been proved. The plaintiff was fourteen days in attendance on the patient, sufficiently long to have frequently corresponded with the Manager of the road, and to have received from him ratification or otherwise of the employment. The road probably had a telegraph line from its headquarters through Ocala by which the news could have been very quickly conveyed and an answer returned. It does not appear by the record that the company or any of its officers, except only Redd and Jolly, were ever aware of the injury done to Spate, or were informed of the employment of the plaintiff until this action was brought.

In the case of Tucker vs. St. Louis, Kansas City and Northern Railway Company, 54 Mo., 177, the court says: It will appear by an examination of the evidence that the facts which it tended to prove, if all taken to be true, do not prove the liability of the defendant to pay for the services of the plaintiff sued for. " It is shown that the station agent of defendant, when the young man was injured, directed a boy to go for a doctor, and that the boy brought

the plaintiff, and that the conductor on the cars of defendant told plaintiff to give the wounded man attention, and he would be paid; but there is no pretence of any evidence by these witnesses that they have any authority to employ a physician on defendant's account, or that they ever pretended to employ a physician on defendant's account. It is only shown that they were agents of defendant in conducting its railroad business, which of itself could certainly give them no authority to employ physicians for the defendant to attend and treat persons accidentally injured on the road."

The rule as laid down in Rorer on Railroads, *supra*, is sustained by abundant authority. See Atlantic and Pacific R. R. Co. vs. Reisner, 18 Kan., 458, where it is held that a mere station agent has no such authority to bind the company, but that the general agent or manager, by virtue of his position, has such authority. Marquette & Ontonago R. R. Co. vs. Taft, 28 Mich., 289; Atchison & Nebraska R. R. Co. vs. Beecher, 24 Kan., 228; Brown vs. Missouri, K. & Texas R. R. Co., 67 Mo., 122; Louisville, Evansville & St. L. R. R. Co. vs. McVay, 98 Ind., 391.

Many other cases to the same effect might be cited, and we know of no authority to the contrary, except the case in 98 Indiana R., 358, the Terre Haute & I. R. R. Co. vs. McMurray, which we do not approve. The company cannot be held liable upon the contract of the roadmaster or conductor in employing the physician, inasmuch as there is in this case no proof of their authority to bind the corporation. Had the acts been ratified by the corporation or by their General Manager the case would have been different.

The judgment is reversed and a new trial awarded.