BRAMAN, DOW & COMPANY

*vs.*

KENNEBEC GAS AND FUEL COMPANY AND TRUSTEE.

Kennebec. Opinion July 3, 1918.

*Corporations. General rule as to Boards of Directors authorizing and designating
certain persons to act for and in their behalf. Rule as to authority of general
manager to bind his corporation. Powers of general manager.
Authority of general manager to ratify acts within the
scope of his authority to so contract.*

When the directors of a business corporation, authorized by its by-laws "from
time to time to provide for the management of the affairs of the company at
home or abroad in such measure as they see fit, and in particular, from time to
time to delegate any of the powers of the Board in the course of the current
business of the company to any standing or special committee, or any officer or
agent, and to appoint any person to be the agent of the company, with such
powers, (including the power to sub-delegate) and upon such terms as may be
thought fit, so far as it may legally do so,"—appoint a general manager of the
company, such general manager, although his duties and authority are not
expressly defined by vote of the directors, must be held to have been clothed
with all the authority which the term implies, and which is ordinarily incident
to that position.

A general manager so appointed by the directors of a gas company has authority
to purchase pipe and other materials necessary in the operation of the plant, and
to arrange payment therefor, although such financial arrangements are made
by the general manager through another person not connected with the
company.

A general manager may have authority to ratify a contract which is within the
scope of his authority to make, when such contract is made by an unauthorized
person.

Action on the case to recover damages for failure of defendant to
perform the terms of a certain contract relative to the sale of certain
property to defendant company. Defendant filed plea of general
issue. At close of evidence, case was reported to Law Court upon
certain agreed stipulations. Judgment in accordance with opinion.

Case stated in opinion.

*Carroll N. Perkins, and Allen & Smith,* for plaintiff.

*Mark J. Bartlett,* for defendant.

SITTING: SPEAR, BIRD, HANSON, PHILBROOK, DUNN, MORRILL, JJ.

MORRILL, J.  This is an action to recover damages for failure to accept certain quantities of pipe which plaintiffs claim that the defendant agreed to purchase of them and to accept and pay for, upon presentation at any bank in Waterville of sight drafts with bills of lading attached.  The case is before us on report and it is agreed that if plaintiffs are entitled to recover, the damages shall be fixed at $1,048.30.

The position of defendant is thus stated in the brief of its counsel: "The contention of the defendant is that the goods were never purchased or contracted for by it and the shipment was made, in the way it was, without its consent.  That the agreement made for the purchase of the goods and shipment was made by a party not connected with the defendant in any way as officer or agent, and whom it had never held out as authorized to act for it in the matter of the purchase and shipment of the goods, and that it never ratified or confirmed any contract of purchase."

The facts are not seriously in controversy.  The transaction had its inception upon July 25, 1917, when one Morrill, a salesman of the plaintiffs, called at the office of the defendant corporation in Waterville and asked the general manager of the defendant, one Colton, if they were in the market for anything in his line; inquiries by Mr. Colton for prices on certain amounts of 6 in., 4 in., 3 in. and 2 in. pipe followed; the prices quoted being apparently satisfactory, the salesman, in the presence of Mr. Colton, called by telephone the Boston office of the plaintiffs and ascertained by talking with Mr. Sheldon, one of the plaintiffs, that the firm had in stock the desired amount of 4 in., 3 in., and 2 in. pipe; by direction of Mr. Colton the order was placed by telephone with the assurance that copy would be forwarded that night.  Mr. Colton then gave to Mr. Morrill a printed order blank of Kennebec Gas and Fuel Company and the latter then wrote the order and Mr. Colton signed it, "Kennebec Gas and Fuel Co. By Francis Colton, Superintendent."  This written order specified the terms of payment to be "60 das. net 2% 10 das.", and the pipe was

to be "F. O. B. Waterville"; these details had not been communicated to Mr. Sheldon, but were inserted in the written order by the salesman.

The next day, July 26, 1917, upon receipt of the written order, plaintiffs wrote defendant as follows:

"In regard to your valued order and conversation over the telephone on Wednesday in regard to the shipment of material, we should want a guarantee for the payment from you from bank or else payment before shipping the material. We will be willing however, to ship the order with sight draft attached to the bill of lading if you will arrange with the bank in Waterville to pay each draft on arrival of each car.

We have the pipe at present in stock and can make shipment at once. There will probably be four car loads of it. Pipe is scarce and some sizes are about out of the market, and we wish you would advise us as soon as possible in regard to the above."

On July 30th Mr. Colton wrote plaintiffs as follows:

"Referring to your letter of July 26th and to our conversation on the telephone at a previous date,

"I have arranged to furnish you ample guarantee for the payment of pipe ordered from your office. Mr. Patrick Hirsch, President of the Constructive Utility Corporation, 149 Broadway, New York, who also represents A. B. Benesch & Co. of New York, will call upon you in your office Thursday and arrange to your satisfaction any payment guarantee necessary.

"In the meantime kindly consider the pipe purchased from this office sold to us. We wish this pipe could be delivered in Waterville as soon as possible."

On the same day plaintiffs wrote the defendant asking, "if you can give us the information and security or guarantee that we desired, and if not, if you wish us to release this pipe on other orders. We have been holding it for you and it is extremely scarce in the market, particularly the 4 inch size. We have an inquiry to-day taking all that you specified; we cannot replace this for some little time and need to know whether or not we are to cancel your order before giving this party the final answer."

And on the next day, July 31, plaintiffs wrote defendant as follows:

"Replying to your letter of 30th inst.; we shall be glad to talk with your representative when he calls on Thursday, and, in the meantime,

understanding that you wish the pipe covered by the original order we are holding the same and letting the other proposition go by as we cannot fill both."

These letters with the order must be regarded as evidence of a completed contract for the sale and purchase of the pipe, in which the defendant by Mr. Colton acceded to the terms of the plaintiffs that satisfactory guarantee be furnished. We have quoted the correspondence at length, because counsel for defendant earnestly contends that the contract was not closed with Mr. Colton but with Mr. Hirsch on August 11, and in support of his position he relies on a letter from his client to the plaintiffs, dated August 7th, as showing that the matter was still open. That letter contains this sentence which is relied upon: "As he (Mr. Hirsch) stated to you we intend to purchase the pipe and if sufficient cash discount is allowed pay for same in this manner; i. e. after pipe has been received and quantity checked." We do not construe this letter in accord with counsel's views; it seems to have been written by Mr. Colton to reassure plaintiffs that the pipe would be taken—a reassurance which might have been considered opportune on account of the failure of Mr. Hirsch to furnish the promised guarantee—and to advise plaintiffs that their suggestion of cash payment was under consideration.

Was Mr. Colton authorized to make this purchase and to arrange terms of payment or guarantee? Did defendant clothe him with such apparent authority that it must be held bound by his acts?

We have no doubt that Mr. Colton had such authority. He had been elected "general manager" of the defendant corporation; the by-laws of the defendant empower the directors "from time to time to provide for the management of the affairs of the company at home or abroad in such measure as they see fit, and in particular, from time to time to delegate any of the powers of the Board in the course of the current business of the company to any standing or special committee, or any officer or agent, and to appoint any person to be the agent of the company, with such powers, (including the power to sub-delegate) and upon such terms as may be thought fit, so far as it may legally do so."

Mr. Colton was not only appointed by the Board of Directors "general manager of the company," but so far as appears was the only executive officer of the company in the State; of the five directors of the company, four resided in New York and one in Waterville, but

the latter does not appear to have exercised any active duties in the management of the corporate affairs. Mr. Colton himself says, "My duties as general manager, as I understand them, are to conduct the local affairs of the company, and to buy materials and pay for materials as necessary in the operation of the plant." While his duties and authority do not appear to have been defined by express vote of the directors, when Mr. Colton was elected general manager, under the authority of the by-laws quoted, the company must be held to have clothed him with all the authority which the term implies, and which is ordinarily incident to that position.

A general manager of a business corporation, such as this defendant corporation is, has general charge of those business matters for the carrying on of which the company was incorporated. These might include the buying of material, the employment of laborers, the supervision of their labor, the manufacture of gas, its distribution, and the general ways and means of accomplishing the object of the corporation.

*Washington Gaslight Co.* v. *Lansdell*, 172 U. S., 534, s. c. Law. Ed. Bk. 43, page 543.

The term "general manager" of a corporation, according to the ordinary meaning of the term, indicates one who has the general direction and control of the affairs of the corporation, as contradistinguished from one who may have the management of some particular branch of the business. *Railway Co.* v. *McVay*, 98 Ind., 391, s. c., 49 Am. Rep., 770.

We think that the defendant must be held to be bound by the action of Mr. Colton in purchasing the pipe and arranging for shipment thereof, as he did. It must be conceded that the material was suitable and of a kind required for the company's business, and that the amount was not unreasonably large. We must hold that a general manager of a company of this kind has authority to buy and arrange to pay for such material. The authorities in this State as to powers of general agents are in harmony with this conclusion. *Trundy* v. *Farrar*, 32 Maine, 227; *Heath* v. *Stoddard*, 91 Maine, 499.

But the defendant contends that the agreement for the purchase of the goods and shipment was made August 11th with one Patrick Hirsch, who was not connected with the defendant corporation.

We think that the evidence does not sustain this position. It is true that no arrangements had been closed about shipping the pipe

until the interview between Mr. Sheldon and Mr. Hirsch on August 11th; but, as we have seen, Mr. Colton had closed the trade for the pipe on July 30th; he had arranged the required guarantee with Mr. Hirsch; later, on August 7th, he notified plaintiffs that defendant would pay cash if sufficient discount was allowed. It is very clear that Mr. Colton made the arrangements through Mr. Hirsch for the shipment of the pipe, with sight draft, bill of lading attached. It is a reasonable inference from his testimony and from his letter to plaintiffs of August 16th, acknowledging advice that the pipe was being so shipped, that he knew that Mr. Hirsch, through whom he was making his financial arrangements, had made the arrangements on which the pipe was shipped and that those arrangements were satisfactory to him, and were in accordance with his understanding of the terms of the sale. A general manager may have authority to ratify a contract which is within the scope of his authority to make, when such contract is made by an unauthorized person. *Railway Co.* v. *McVay,* supra. Mr. Colton, as general manager of the company, and not Mr. Hirsch was the active representative of the defendant corporation. Under the broad powers of a general manager appointed under the authority of the by-laws quoted, Mr. Colton had authority to arrange through Mr. Hirsch for the shipment. Indeed it is difficult to understand the object of Mr. Hirsch's call at the office of plaintiffs on August 11th, except to learn from Mr. Sheldon's lips the terms which had already been stated in correspondence and to assure Mr. Sheldon, that the funds would be in Waterville to meet the drafts.

The suggestion now made by Mr. Colton, that he should have had an opportunity to check up the pipe, impresses us as an afterthought. The pipe was in Waterville several weeks, and no request was made, so far as appears, for opportunity to inspect it; Mr. Colton permitted the drafts to be returned twice without any such suggestion.

A careful study of the evidence makes clear that the failure of defendant to accept and pay for the pipe was not on account of want of authority in the person contracting for same, nor for lack of opportunity to inspect the shipment.

*Judgment for plaintiffs for $1048.30*
*with interest from date of writ.*