No. 786.

## CHAPLIN, ETC., *v.* FREELAND.

EMPLOYER AND EMPLOYE.—*Liability of Employer for Medical and Surgical Attention Given an Injured Employe.—Principal and Agent.— Authority of Agent.*—The manager of a factory, for either an individual or a corporation, has not the power to bind his principal for medical and surgical treatment given an employe who has been injured while in the discharge of his duties at the factory, in the absence of any facts showing an emergency, save the necessity for the immediate services of a physician or surgeon.

From the Lawrence Circuit Court.

*M. F. Dunn* and *J. D. Alexander*, for appellant.
*J. Giles* and *J. A. Zaring*, for appellee.

GAVIN, C. J.—This was an action by appellee against appellant, to recover for services rendered to a servant of appellant, who was injured while in his employ.

There are three paragraphs of complaint, each of which was tested by demurrer, and its sufficiency properly presented here. The first paragraph is clearly good. It alleges that appellee was a physician and surgeon, and was called and employed by appellant to treat one Fields, who had been injured; that in pursuance of such employment the services were rendered, and the value, etc.

The second paragraph alleges that appellant Chaplin was a resident of Canada, doing business at Heltonsville, Lawrence county, Indiana, manufacturing buggies, hubs, etc., under the name of the Heltonsville Manufacturing Company; that in November, 1891, one Joseph Fields, during his employment by appellee, was personally injured so as to require the immediate attention of a skilled surgeon, by reason whereof appellee was called and employed to treat him by appellant, by and through one

Frank Marvin, "its foreman," and Thomas T. Smith, its superintendent and general manager, and in pursuance of such employment appellee did render the services sued for, of the value of $200, which is due and unpaid.

The third paragraph is similar to the second, except it is here directly averred that Fields was, while at work for appellant in the line of duty, badly injured by the machinery of appellant, his wounds being of so serious a nature as to create an emergency for the immediate attention of a physician in order to save such employe's life. It is also alleged that appellee was called by Marvin, the foreman, and then employed by Smith, the sole general manager and agent of the said defendant, and who had entire charge and control of the business of said appellant.

The question for determination, as presented by counsel for both parties, is whether, under these facts, the agents, Marvin and Smith, had authority to bind the appellant.

The name assumed by appellant, and under which he did business, can not in any manner affect his liability, nor can he be held simply by reason of the assumption of an apparently corporate name to have assumed liabilities such as might pertain to a corporation.

Counsel for appellee thus state the proposition: "It is all narrowed down to one question, viz: Can a sole general manager and agent bind a nonresident principal by his contracts, or can a nonresident principal delegate to another person authority to take charge of and manage his business, and to contract in his name?"

The vital question in this case is not as counsel put it: "Can the principal delegate to another authority," etc., but "has the principal delegated such authority in this instance?"

It may be conceded that under the allegations of this complaint Smith was the general agent of appellant with reference to the manufacturing business at Heltonsville. This, however, does not authorize him to bind his principal by everything he may do.

In *Manning* v. *Gasharie*, 27 Ind. 399, we find the rule correctly laid down on p. 411: "A general agency exists where there is a delegation to do all acts connected with a particular business or employment. Story on Agency, section 17, p. 18.

"A general agent is presumed to be authorized to do all acts connected with and proper in the transaction of the business entrusted to his care.

"Whatever acts are usually done by such class of agents, whatever rights are usually exercised by them, and whatever duties are usually attached to them, all such acts, rights and duties are deemed to be incidents to the authority confided to them, in their particular business, employment or character." Story on Agency, section 106, p. 94.

So long as the agent acts within the general scope of his authority, the principal is bound, even though he transcend his actual authority, unless this limitation upon his authority be known to the one dealing with him. But how is this court to know that the employment of a physician is within the general scope of the duties of a general manager of a buggy factory? In order to sustain this pleading, we must, as a matter of law, take judicial notice that such is the case. We are not, in any manner, given such information by the pleading, which alleges no facts which would enlighten us. No direct authorities have been cited to sustain the proposition, save a reference to the general principle by which railroads are held liable on such employments in certain cases. Railroad companies occupy a peculiar

position with reference to such matters, exercising *quasi* public functions, clothed with extraordinary privileges, carrying their employes necessarily to places remote from their homes, subjecting ·them to unusual hazards and dangers, the law has, by reason of the dictates of humanity and the necessities of the occasion, imposed upon such companies the duty of providing for the immediate and absolutely essential needs of injured employes, when there is a pressing emergency calling for their immediate action. In such cases, even subordinate officers are, sometimes, for the time being, clothed with the powers of the corporation itself for the purposes of the immediate emergency, and no longer. *Terre Haute, etc., R. R. Co.* v. *McMurray,* 98 Ind. 358; *Toledo, etc., R. R. Co.* v. *Mylott,* 6 Ind. App. 438, 33 N. E. Rep. 135.

Many authorities cited in these cases recognize the rule to be that the general manager of a railroad has power to employ physicians on behalf of his road. *Louisville, etc., R. W. Co.* v. *McVay,* 98 Ind. 391.

It is also a matter of common knowledge that railroad companies habitually and regularly employ surgeons and physicians in connection with the conduct of their roads.

If there is such a custom, however, among manufacturers it has certainly not become so general as to justify us in taking judicial knowledge of it.

As we have stated, we have been referred to no case holding it to be within the scope of the duties of a manager of a factory, for either an individual or a corporation, to employ physicians or surgeons for employes. Neither have we been able to find any such case.

The case of *Swazey* v. *Union Mfg. Co.,* 42 Conn. 556, is cited as authority for the proposition in 1 Am. and Eng. Encyc. of Law, 365, as applied to a corporation, but the learned editors have misconceived the holding of

the case which is directly to the contrary, deciding that it must be left to the jury as a question of fact whether or not he had such power.

We are not prepared, therefore, to hold as a matter of law that the employment of a physician or surgeon for injured employes comes, ordinarily, within the scope of the duties of a general manager of an ordinary manufacturing business.

Usually an injured employe procures and pays for his own attendance, and then, if his employer be in the wrong, recovers this sum from his employer with his other damages. Whether or not such an extreme case might arise as would justify or require the court to impose on individual employes a duty analogous to that imposed on railroad companies, it is unnecessary for us to determine. There are here no facts showing any emergency, save the necessity for the immediate services of a surgeon. No necessity for action by the employer is shown. It does not appear but that the injured man was possessed of abundant means to provide for himself, nor does it appear that he lacked friends and relatives both able and willing to provide for him.

Our conclusion, therefore, is that the court erred in overruling the demurrer to the second and third paragraphs of complaint.

The judgment is therefore reversed, with instructions to sustain the demurrer to these paragraphs, with leave to amend.

Filed Oct. 13, 1893.