## CUSHMAN *v.* CLOVERLAND COAL & MINING COMPANY.

[No. 21,274. Filed May 15, 1908.]

1. PLEADING.—*Complaint.*—*Contracts.*—*Ratification.*—*Mining Companies.*—*Physicians.*—*Emergencies.*—A complaint alleging that defendant coal mining company's mine superintendent employed plaintiff, a physician, to attend a miner who was critically injured in defendant's mine; that such superintendent immediately reported such employment to the defendant, whose president and general manager ratified such contract, is based upon an employment by the defendant's president and general manager, rather than by its mine superintendent. p. 404.

2. CONTRACTS.—*Ratification by Officers of Corporation.*—Unless the president who was also the general manager of a coal mining company has authority, either express or implied, from the board of directors, to make a contract in the first instance, he cannot ratify one made by the company's superintendent employing a physician for an injured miner in case of an emergency. p. 404.

3. CORPORATIONS.—*Acts by Agents.*—Corporations act exclusively by agents, and the relations of such agents to their principals are governed by the same rules as prevail with individuals and their agents. p. 405.

4. SAME.—*Presidents.*—*Powers.*—Presidents of corporations have only such powers as are given to them by law, or by their boards of directors. p. 405.

5. CORPORATIONS. — *Presidents.* — *Authority.* — *Burden of Proof.*— When the president of a corporation does an act within the scope of the usual duties of the chief officer, it is presumed that he acts with authority, and whoever alleges the contrary must prove it; but where the chief or other officer performs an act not pertaining to the chartered business nor established by usage it must usually be alleged and proved that he was authorized by the directors. p. 405.

6. SAME.—*Commercial.*—*Officers.*—*Power to Employ Physician for Injured Employes.*—*Railroads.*—The officers of commercial corporations have no power, ordinarily, to employ physicians to attend injured employes, though in certain cases of emergencies the officers of railroad companies may so employ. p. 405.

7. PLEADING. — *Complaint.* — *Coal Mining Company.* — *Employing Physician.*—*Emergency.*—An allegation that the injured miner's wounds were of "so serious a nature as to create an emergency for the immediate attention of a physician * * * in order to save said employe's life," is but a conclusion, the facts showing the emergency being essential. p. 407.

8. SAME.—*Complaint.*—*Want of Facts.*—*Presumptions.*—Where the complaint fails to state the facts, the presumption is that they are unfavorable to the plaintiff. p. 408.

From Clay Circuit Court; *Presley O. Colliver,* Judge.

Action by Daniel W. Cushman against the Cloverland Coal & Mining Company. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court under subd. 2, §1394 Burns 1908, Acts 1901, p. 565, §10. *Affirmed.*

*A. C. Miller,* for appellant.

*A. W. Knight,* for appellee.

HADLEY, J.—Whether the complaint states facts sufficient to withstand a demurrer is the only question presented by this appeal. The question rests upon the following averments: "That on or about March 12, 1904, Antone Cageouchas, during his employment by, and while at work for, said defendant, was personally injured, his wounds being of so serious a nature as to create an emergency for the immediate attention of a physician and surgeon in order to save said employe's life; that by reason whereof plaintiff was called and employed by defendant, by and through Ed-

ward Somers, its mine superintendent, to attend and treat said employe, which said superintendent immediately reported to said defendant his said act; that said defendant, by its president and general manager, with full knowledge of the employment of this plaintiff, ratified and confirmed the same by then and there stating to said superintendent that 'that was all right; that was the thing to do;' that thereafter said defendant, by its president and general manager, R. S. Tenant, notified this plaintiff to purchase what was necessary to aid in the further treatment and attention of said injured employe; that said defendant well knew that this plaintiff was continuing to attend and treat said injured employe, and that said defendant did nothing toward giving this plaintiff notice that it would not recompense him for his services, but notified this plaintiff that it would recompense him for the same.''

The complaint shows that, upon the employment of the plaintiff by the mine superintendent, the latter immediately reported the fact to Tenant, the defendant's president 1.  and general manager, who, with full knowledge of the employment of the plaintiff, ratified and confirmed the same by expressing his approval, and by requesting the plaintiff to supply the injured employe with necessaries. So the question really rests upon the ratification by the defendant, acting through its president and general manager, rather than upon the power of the mine superintendent to make the contract of employment.

Ratification can only be made by one who has power to make the contract in the first instance.   If the president and general manager had authority, either express or implied, from the defendant's board of directors, to 2.  plied, from the defendant's board of directors, to employ the plaintiff, on behalf of the corporation, to render the services sued for, then he could, no doubt, give validity, by ratification, to the superintendent's contract. *Hord* v. *State* (1907), 167 Ind. 622.   Does the complaint show that he possessed such power?

Corporations act exclusively by agents. The officers, principal and subordinate, are but agents, created and granted all their powers by the board of directors. In respect to being commissioned to act for the principal, the agent of the corporation, of whatever station or rank, is governed by the same general rules and principles of the law as the agent of an individual. *National State Bank* v. *Vigo County Nat. Bank* (1895), 141 Ind. 352, 355, 50 Am. St. 330; *Brooklyn Gravel Road Co.* v. *Slaughter* (1870), 33 Ind. 185. The naked act of investing the individual with the office of president gives him very little power to act for the corporation. He has no power to bind it in material matters, except as he may be authorized by law, or by the board of directors. *Louisville, etc., R. Co.* v. *McVay* (1884), 98 Ind. 391, 49 Am. Rep. 770; *National State Bank* v. *Vigo County Nat. Bank, supra.* When the president and general manager does an act within the domain of the general objects or business of the corporation, and within the scope of the usual duties of the chief officer, it will be presumed that he had the authority to do it, and whoever would assert the contrary must prove it. But when a chief or other officer performs an act, not incidental, or pertaining to the chartered business of his corporation, nor engrafted thereon by a well-established usage, it must, as a general rule, be alleged and proved that he was duly authorized by the directors. *Louisville, etc., R. Co.* v. *McVay, supra,* and cases cited.

Another general rule, apparently of universal acceptance, is that officers of corporations organized for, and engaged in, commercial pursuits, without special authority, cannot, as a legal right, charge the corporation with the employment of physicians and surgeons to attend upon sick or injured employes. The rule is even applicable to railroad companies. No court, we think, has gone so far as to hold that even the general manager of a railroad may, on behalf of the company, engage generally in providing

medical aid to sick and injured employes and passengers, especially where it is not shown, as in this case, that the sickness or injury was the result of the company's negligence.

A modified exception to the rule, applicable to railroad companies, is generally recognized, founded upon the exceptional characteristics and hazards of their operation. Employes of railroad companies, particularly trainmen, are called upon to perform their duties along the line of the railroad, extending many miles. When on duty they are constantly away from home, often at remote distances, among strangers, and beyond the quick reach of family and friends. In such cases, when the employe becomes seriously ill, or suffers a severe injury, and he has available neither family, friends, credit, nor ability to provide for himself the care and medical assistance his condition imperatively demands, the dictates of humanity cast upon the employer, as the one nearest in obligation, the duty to provide, during the continuance of the emergency, whatever is immediately and urgently required for the preservation of life and limb. It is only when there is no relative or friend present willing to help the sick or injured employe, at a time of urgent necessity, that the duty and authority rests upon the employer, acting by its highest representative present, to render assistance. Some one must serve the helpless man, and the law places the duty upon the master rather than upon a stranger. The duty arises with the emergency and ends with it. *Terre Haute, etc., R. Co.* v. *McMurray* (1884), 98 Ind. 358, 49 Am. Rep. 752; *Ohio, etc., R. Co.* v. *Early* (1895), 141 Ind. 73, 81, 28 L. R. A. 546; *Chaplin* v. *Freeland* (1893), 7 Ind. App. 676; *New Pittsburgh Coal, etc., Co.* v. *Shaley* (1900), 25 Ind. App. 282; 4 Thompson, Negligence (2d ed.), §3840; 1 Elliott, Railroads (2d ed.), §222. But this exception relating to railroads has no bearing on the question before us. The appellee is a coal mining company, a strictly private corporation. Its business is stationary. Its employes perform their duties in one general working place, near their homes,

family, friends and acquaintances, and have the same facilities, as may be possessed by the corporation, for hastily summoning medical and other aid in time of pressing emergency.

There is no greater or different reason for holding a private mining corporation responsible for supplying medical aid for its employes than appertains to all kinds of manufacturing bodies; and we perceive no reason why corporations of either class, under ordinary circumstances, should be required to furnish their workmen with medical services any more than they should be required to furnish them with dinners. The policy of the law is to protect the employe, equally with the employer, in the fullest freedom of choice in supplying his personal wants of every kind, whenever he is as capable and as well prepared as his employer to act for himself. We do not, however, hold that a case cannot arise with a mining or manufacturing company, or even with an individual, wherein the facts may be so unusual and extreme as to impose upon the employer a duty analogous to that imposed on railroad companies. But no such a case appears under the facts alleged in the complaint.

It is alleged that the defendant is a corporation organized for, and engaged in, the business of mining coal; that the plaintiff was personally injured while at work for the defendant as one of its employes.

There is no averment that either the mine superintendent or the president and general manager had received authority, express or implied, from the corporation to contract for or to ratify the employment sued upon. We are not informed even of the nature of his employment, whether as engineer, blacksmith, miner or other particular service. Neither are we informed of the nature or extent of his injury, nor of the facts that created the emergency that imposed upon the coal company the duty of employing the plaintiff. It is not averred that the injured employe was unable to help himself, that he had no money, credit, family or friends present to give him assistance, nor

is it shown by the complaint that there existed any other reason why he was not as able and competent as the company speedily to summon a physician. The averment that the injured party's wounds were so severe as to create an emergency for the immediate attention of a physician and surgeon in order to save life is but pleading the baldest conclusion. Facts and not conclusions must be stated. *Davis v. Clements* (1897), 148 Ind. 605, 609, 62 Am. St. 539.

The essential facts that should appear in support of a justifiable emergency are absent, and, as in all other cases, we must, in testing the sufficiency of the pleading, assume such absent facts to be adverse to the pleader, under the general presumption that a party will set forth all the facts favorable to his case. For a case in point, see *Spelman v. Gold Coin Mining, etc., Co.* (1901), 26 Mont. 76, 66 Pac. 597, 91 Am. St. 402, 55 L. R. A. 640. It has been held that a laundryman is not liable for a contract of employment made by an unauthorized forewoman in a pressing emergency. *Holmes v. McAllister* (1900), 123 Mich. 493, 82 N. W. 220, 48 L. R. A. 396.

The court did not err in sustaining the demurrer to the complaint. Judgment affirmed.