BURGER MAN, INC. AND VESCO CORPORATION *v.* JORDAN
PAPER PRODUCTS, INC.

[No. 2-775A178. Filed August 18, 1976. Rehearing denied November 23, 1976. Transfer denied April 15, 1977.]

*Gregory B. Smith, Smith & Smith,* of Muncie, for appellants.

*Charles R. Clark, White Pierce Beasley & Gilkison,* of Muncie, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J.—The instant case was transferred from the Second District to this office on July 15, 1976, in order to lessen the disparity in caseloads between the Districts.

Defendants-appellants Burger Man, Inc. hereinafter (Burger Man) and Vesco Corporation (hereinafter Vesco) appeal from the award of a judgment of $22,089.48 plus costs in favor of plaintiff-appellee Jordan Paper Products, Inc. (hereinafter Jordan).

We affirm.

## FACTS

The facts necessary for our disposition of this appeal are as follows: Burger Man was an Indiana corporation which operated a chain of restaurants in Ohio and Indiana until December, 1973. It was a totally owned subsidiary of Vesco. The management of the two organizations overlapped, but was not identical.

Jordan is an Indiana corporation engaged in the wholesale distribution of paper products. It warehouses products for its customers at its place of business in Muncie.

Nelson Heinrichs (hereinafter Heinrichs) is the president of Jordan. He testified that Larry Lattomus (hereinafter Lattomus), who was on the Board of Directors of both Burger Man and Vesco as well as being president of Burger Man, entered into an oral agreement with him for the warehousing and sale of special print merchandise around the middle of 1970. Special print merchandise is any particular item that has a special print that identifies with the customer.

The dispute between the parties herein arose when Burger Man denied, and refused to pay, the amount claimed to be owed by Jordan. Jordan sought to recover against Vesco on the theory that Vesco and Burger Man were so closely connected that the corporate veil of these two legal entities should be pierced, or alternatively, because of certain state-

ments made by Lattomus to Heinrichs he could reasonably believe Lattomus had the authority to bind Vesco.

## ISSUES

I. Did irregularities in the proceedings, orders, acts, rulings, or procedures of the trial court, or misconduct of Jordan, alone or in combination, work a denial of a fair trial for Vesco and Burger Man?

II. Is the judgment supported by sufficient evidence as to Burger Man?

III. Is the judgment supported by sufficient evidence as to Vesco, so as to render it liable for the debts of its subsidiary?

IV. Did the trial court have in personam jurisdiction over Vesco?

V. Did the Statute of Frauds bar the enforcement of the alleged contract against Vesco?

VI. Did the proferred newly discovered evidence require the granting of a new trial?

VII. Should defendants' Trial Rule 41(B) motion have been granted?

## DECISION

ISSUE ONE:

Burger Man and Vesco argue that the proceedings in the trial court were so confusing and improper that they were denied a fair trial.

The record discloses that Jordan filed a complaint on November 9, 1973, seeking to recover money which allegedly was due because of their contract with Burger Man. The pretrial conference was scheduled for September 16, 1974, the morning of the trial. Following the conference, the court did not enter a pre-trial order.

We agree that error was committed, but do not feel that the errors were of such magnitude that a reversal is required.

Ind. Rules of Procedure, Trial Rule 61 provides:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

See also, Ashley v. City of Bedford (1974), 160 Ind. App. 634, 312 N.E.2d 863, 876.

Vesco and Burger Man first argue that the trial court committed reversible error by admitting into evidence Jordan's exhibit number one because it was not attached to or included in appellee's complaint.

Ind. Rules of Procedure, Trial Rule 9.2 (A) provides:

*"When any pleading allowed by these rules is founded on a written instrument,* the original, or a copy thereof, must be included in or filed with the pleading. Such instrument, whether copied in the pleadings or not, shall be taken as part of the record." (Our emphasis.)

We feel Vesco and Burger Man have misconstrued the above cited trial rule. Before the original or a copy of a written instrument must be filed with the complaint, it is necessary that the pleading be founded upon the written instrument. Jordan's Complaint for Money Due does not indicate that its claim is founded on a writing executed by the parties. Furthermore, Jordan's answers to interrogatories propounded by Vesco and Burger Man clearly indicate that the contract being sued upon was oral.

The record thus leads us to the inescapable conclusion that Jordan's exhibit number one was not the foundation of its complaint, but rather was evidence that an oral contract had existed, and currently was existing between the parties.

Vesco and Burger Man next complain that the trial court erred by overruling its Motion for a More Definite Statement which sought to raise the issue of Jordan's failure to attach documents to its complaint approximately nine months after the motion was filed.

Vesco and Burger Man seek to utilize Ind. Rules of Procedure, Trial Rule 12(E) in a manner in which it was not intended to be used. The appellants' proper course of action to discover any documents in the possession of Jordan would have been to have utilized one of the discovery vehicles provided by our trial rules and not through a TR. 12(E) motion to make more specific.

We are unable to find any error which would require us to reverse this case because of the court's delay in ruling on the TR. 12(E) motion.

We feel that any error which may have been caused as a result of the trial court's failure to rule upon motions in the most expeditious manner was waived as a result of the inaction of Vesco and Burger Man.

Vesco and Burger Man had in the trial court an adequate remedy to cure the error of which they presently complain. Ind. Rules of Procedure, Trial Rule 53.1 provides in relevant part:

". . . The court shall hear motions without delay when hearing is required or granted, and shall rule upon a motion promptly after hearing thereof, or after filed when no hearing is required or granted. . . . *Upon failure of a court to enter a ruling upon a motion within thirty (30) days after it was heard or thirty (30) days after it was filed . . . if no hearing was required, the submission of such motion may be withdrawn, and the judge before whom the cause is pending may be disqualified therein; in which event, the case shall be transferred to a judge to be appointed by the Supreme Court, except that this provision shall not apply where. . . .*" (Our emphasis.)[1]

---

1. There are four exceptions to this trial rule, none of which are applicable to the case at bar.

Vesco and Burger Man's failure to utilize the proper procedure to correct any error which existed because of the court's delay in ruling constituted a waiver of the error. See TR. 61, *supra;* and *Umbstead et al.* v. *Preachers' Aid Society of the Northwest Indiana Conference of the Methodist Episcopal Church* (1944), 223 Ind. 96, 103, 58 N.E.2d 441, 443. For the same reason, we find that the trial court's failure to rule on appellants' Motion for Joinder of an Indispensible Party, and for Judgment on the Evidence, was waived. *Preston* v. *Hammond* (1972), 153 Ind. App. 447, 287 N.E.2d 774.

Vesco and Burger Man next contend that reversible error was committed when Jordan's exhibit number one was not produced in response to their interrogatories. The record discloses the following interrogatory and answer thereto:

"8. Will you attach, without a specific court order, a copy of each such record of the alleged oral contract to answers to these interrogatories?
Answer: Yes."

Jordan does not dispute the fact that its exhibit number one was not turned over in response to this request.

We feel that Jordan's failure to turn over this exhibit in response to Vesco and Burger Man's interrogatories was not reversible error, albeit regrettable conduct, for two reasons.

First, although a TR. 33 interrogatory is a proper discovery method to determine the existence of documents, it is not a proper discovery tool to compel the production of documents. If a party desires another party to produce documents the proper method to compel such production would be through a TR. 34 Motion to Produce Documents. To allow a party to compel the production of documents by filing interrogatories, would be to allow them to by-pass the more stringent requirements of TR. 34. This rule provides, *inter-alia:*

"The request may, without leave of court, be served upon the plaintiff after commencement of the action and upon

any other party with or after service of the summons and complaint upon that party. *The request shall set forth the items to be inspected either by individual item or by category, and describe each item and category with reasonable particularly. The request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts.* Service is dispensed with if the whereabouts of the parties is unknown.

\* \* \*" (Our emphasis.)

Although we have been unable to find an Indiana case directly on point, this is the clear import of the Federal decisions which we have examined after which our trial rules are patterned. *Linko* v. *Cleveland-Cliffs Iron Co.* (D.C. Ohio 1949), 9 F.R.D. 615; *Britting* v. *Pennsylvania Greyhound Lines* (D.C. Ohio 1950), 10 F.R.D. 536.

The second reason we find for upholding the trial court's decision to admit Jordan's exhibit number one is that neither Vesco nor Burger Man sought a continuance to examine this evidence when it was offered and admitted into evidence over their objection. As was stated in the case of *Hirsch* v. *Merchants Nat. Bank & Trust Co. of Indiana* (1975), 166 Ind. App. 497, 336 N.E.2d 833 at page 838, this failure to move for a continuance constitutes a waiver of any objection thereto. For the same reason, we find no reversible error in Vesco and Burger Man's producing certain documents on September 16, 1974, which the court had ordered produced by September 13, 1974.

Vesco and Burger Man finally contend that the trial court committed reversible error by not entering an order following pre-trial conference. They argue that if a proper order was entered specifying the exchange and marking for identification purposes of exhibits, then Jordan would not have been allowed to have introduced its exhibit number one.

In the case of *Scott County School District 1* v. *Asher* (1974), 160 Ind. App. 299, 312 N.E.2d 131, our court likewise was presented the issue of whether the trial court's failure to enter a pre-trial order constituted reversible error.

See TR. 16(J). In resolving this issue against the appellant our court stated, at page 134:

"We agree wholeheartedly with these comments and acknowledge that the trial court may have erred in failing to enter a pre-trial order. However, we do not ascribe reversible error to such failure in this case. Trial Rule 61 provides in part that no error in anything omitted by the court is ground for reversal on appeal, unless refusal to reverse would be inconsistent with substantial justice. The rule further provides that any error not affecting the substantial rights of the parties must be disregarded.

"In deciding whether the school's substantial rights were affected we must examine the alleged harm it suffered as a result of the trial court's error. It contends that the lack of a pretrial order resulted in evidence being admitted which was irrelevant and immaterial in that it went beyond the scope of the allegations of negligence as framed by the complaint. It suggests that had a pre-trial order been entered the issues would have been so narrowed as to preclude the admission of the questioned evidence.

"We feel that the proper inquiry when faced with an issue such as this concerns whether or not the purposes of Trial Rule 16 have been so frustrated by the lack of an order as to affect the school's substantial rights. Paragraph (A) of the rule specifies one of the purposes of the conference as being to consider the simplification of the issues. Paragraph (J) provides that the pre-trial order shall recite 'the agreements made by the parties as to any of the matters considered at the conference which limit the issues for trial. . . .' Should such an agreement be reached, it is important that it be embodied in a written order, before trial, so as to control the future course of action and to head off subsequent disputes concerning the matters agreed to at the conference. *See Wiggins* v. *Heim* (1947), 332 Ill. App. 403, 75 N.E.2d 381. *However, if the parties have not agreed on the limitation of issues, a pretrial order would naturally not include any recitation concerning same.* The school in its brief does not allege that any agreement limiting the issues for trial was in fact reached during the pre-trial conference and in its trial motions directed toward the lack of a pre-trial order there was no concern voiced about limiting the issues for trial. *We are of the opinion that where there was no agreement reached at the pre-trial conference concerning the limitation of issues for trial, the school's substantial rights were not*

*affected by the failure of the trial court to enter an order limiting the issues for trial."* (Our emphasis.)

As noted, *supra,* Vesco and Burger Man complain, as did the School District in *Asher, supra,* that a proper pre-trial order would have resulted in the objectionable evidence being kept out of the trial.

As was also true in *Asher, supra,* there has been no showing that the parties entered into any type of agreement respecting exhibits.

Therefore, we are of the opinion that since there was no agreement reached at the pre-trial conference concerning the limitation of issues to those discussed and considered by the parties, neither Vesco nor Burger Man's substantial rights were affected by the trial court's failure to enter an order limiting the issues for trial. TR. 61, *supra.*

Vesco and Burger Man next argue that the trial court committed reversible error by allowing cross and re-cross examination to extend beyond the scope of direct and re-direct examination.

As a general rule it can be stated that in this jurisdiction cross-examination is limited to the scope of direct examination, *Brooks* v. *State* (1973), 259 Ind. 678, 291 N.E. 2d 559, but once a general subject area is opened up on direct, then cross examination may go into any phase of the direct examination, *Ver Hulst* v. *Hoffman* (1972), 153 Ind. App. 64, 286 N.E.2d 214, and this whole area is one to be left to the sound discretion of the trial court. *Franks* v. *State* (1975), 262 Ind. 649, 323 N.E.2d 221.

Vesco and Burger Man basically complain that the trial court's failure to strictly control the examination of witnesses resulted in irrelevant evidence being admitted and thus confused the subsequent course of the trial.

This argument would have some merit if this cause were tried to a jury. However, this case was tried to the court, and

this court will presume that the trial court properly distinguished between relevant and irrelevant evidence before arriving at its judgment absent a strong showing to the contrary. *Bechert* v. *Lehe* (1974), 161 Ind. App. 454, 316 N.E.2d 394; *City of Indianapolis Through Dept. of Transp.* v. *Medenwald* (1973), 158 Ind. App. 128, 301 N.E.2d 795.

Recognizing the discretion which is afforded the trial court in controlling the scope of a witness' examination, we find the court did not err in its rulings on the admission of evidence. Furthermore, had the court committed error it would have been harmless error.

Vesco and Burger Man next contend that the trial court erred in admitting over objection Jordan's exhibit number six, carbon copies of unpaid invoices, for the reason that said exhibits contained hearsay, and were not the original documents.

We will first address appellants' argument that the invoices should not have been admitted into evidence because of the rule forbidding the introduction of secondary evidence to establish a document's contents without first accounting for the whereabouts of the original document. This exclusionary rule is popularly referred to as the "Best Evidence Rule."

The record discloses that when Jordan would receive an order one of its secretaries would fill out a six page document. Although the record is not completely clear, the inference to be drawn from the testimony is that the secretary who received the order would fill out each page of the document simultaneously with the aid of carbon paper inserts. Two pages of the document were then separated and taken to the warehouse. Jordan's truck driver would then carry these documents with him to the customer's place of business. At that time the customer signs the documents (again the record is unclear whether there are two separate signatures or one with a carbon imprint on the second sheet), keeping one for himself and returning the second to Jordan.

The propriety of the best evidence rule in light of modern day technological advancements in the production of facsimiles was dealt with by Judge Garrard in the recent opinion of *Wilson* v. *State* (1976), 169 Ind. App. 297, 348 N.E.2d 90. At page 95 the court stated:

> *"We therefore hold that a 'duplicate' of a document or other writing is a counterpart produced by the same impression as the original,* or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical, electronic or chemical reproduction or other equivalent technique which accurately reproduces the original. Such duplicates are admissible in evidence to the same extent as an original unless a genuine issue is raised as to the authenticity of the original, or under the circumstances existing it would be unfair to admit the duplicate as an original. By this latter qualification, we refer primarily to circumstances affecting the trustworthiness of the duplicate for the purpose for which it is offered. Such circumstances might occur where the duplicate is not fully legible or where only a portion of the total original document is offered and the remainder would be useful for cross examination, or might qualify the portion offered, or otherwise be useful to the opposing party." (Our emphasis.)

We agree fully with this statement of the law. Therefore, we find that the trial court did not violate the best evidence rule by admitting into evidence appellee's exhibit number six. Additionally, the record discloses that the original invoice was mailed to the customer which we feel is an adequate explanation of its whereabout.

Vesco and Burger Man next contend that Jordan's exhibit number six should have been excluded from evidence because of certain hearsay contained therein. Specifically, they object to signatures on these invoices which indicate that the goods had been received by Burger Man. Jordan argues to the contrary claiming that the invoices were "business records", hence, properly admissible as an exception to the hearsay rule.

The requirements for a business record to be properly admitted into evidence as an exception to the hearsay rule were enunciated in the case of *American United Life Insur-*

*ance Company* v. *Peffley* (1973), 158 Ind. App. 29, 301 N.E.2d 651. Therein at page 656 the requirements were stated as follows:

> "A synthesis of the Indiana cases treating what modern authorities call the 'business record' exception to the hearsay rule is that documentary evidence is admissible if identified by its entrant *or one under whose supervision it is kept* and shown to be an original or first permanent entry, made in the routine course of business, at or near the time of the recorded transaction, by one having both a duty to so record and personal knowledge of the transaction represented by the entry." (Our emphasis—Citations omitted.)

The record discloses that Mr. Heinrichs testified as follows:

"Q. Mr. Heinrichs, how are these prepared, the documents of Plaintiff's Exhibit #6?

A. These are written down when we receive the order from Burger Man stores, written down on an invoice.

Q. Is that another color invoice?

A. Yes, the original invoice is mailed to the respective customer. That is, I think, is the fifth part of our invoice that are detached from the original and used to pick the orders out of the warehouse and put it on a truck and then taken to the customer; the merchandise is taken off the truck against this, it is received and another part of this goes along with this and is taken by the customer and we obtain a signature by them at that one delivery.
　　　＊　＊　＊

Q. Is this done in the ordinary course of business by Jordan Paper Products?

A. Yes, it is.
　　　＊　＊　＊

Q. Who took these orders?

A. The girl from our office, the secretary, myself. It just depends on who is answering the phone.

Q. But who took these orders that you are testifying to?

A. The secretaries in the office.
　　　＊　＊　＊"

We feel that all of the elements predicating the admissibility of the records were adequately met.

The records were adequately identified by Mr. Heinrich, the president of Jordan, under whose supervision the records of the company are kept. The invoices were properly admissible as an exception to the best evidence rule as noted above so there need be no showing that the record is original. The records were clearly made in the regular course of business following the receipt of customer orders. The records were prepared at or near the time of receiving the orders. There can be little question concerning the duty of a secretary to take down customer orders for her employer, and since she is the person who took the order she obviously has personal knowledge of the entry she makes on her employer's invoices.

We feel that this testimony causes Jordan's exhibit number six to fall well within the perimeters of *Peffley, supra,* and no error was committed by the trial court in admitting Jordan's exhibit number six into evidence.

Vesco and Burger Man's argument that they were unable to cross-examine the declarants who signed these invoices falls wide of the mark. Many of the traditional exceptions to the hearsay rule afford no opportunity for cross-examination, but nevertheless the evidence sought to be introduced is clearly admissible because of the recognition that they are "necessary" and "trustworthy." See *Peffley, supra,* at page 658.

Vesco and Burger Man next contend that the trial court erred in allowing Mr. Heinrichs to testify as to certain statements allegedly made to him by Mr. Lattomus and Mr. Hart.

The record discloses that at the time of these purported conversations Mr. Lattomus was the president of both Vesco and Burger Man, while Mr. Hart served in the capacity of vice-president of Burger Man and a director of Vesco.

It is the rule in this jurisdiction that the declarations or admissions by a corporate officer or other agent are binding

against his corporation if his statements are made within the scope of his authority. *Whitcomb* v. *Indianapolis Traction & Terminal Co.* (1917), 64 Ind. App. 605, 116 N.E. 444; *Indiana Union Traction Co.* v. *Scribner* (1911), 47 Ind. App. 621, 93 N.E. 1014; *Chicago, St.L & P.R. Co.* v. *Wolcott* (1895), 141 Ind. 267, 39 N.E. 451.

Although we have been unable to find a case directly on point from our jurisdiction we can find no reason to apply a different rule to corporate directors who in addition are assuming the role of corporate officers.

An excellent statement of the rule as it relates to the authority of a corporate officer to bind the corporation is found in the case of *Cushman* v. *Cloverland Coal, etc. Co.* (1908), 170 Ind. 402, 84 N.E. 759, wherein, at page 405, the following general principles were enunciated:

"Corporations act exclusively by agents. The officers, principal and subordinate, are but agents, created and granted all their powers by the board of directors. In respect to being commissioned to act for the principal, the agent of the corporation, of whatever station or rank, is governed by the same general rules and principles of the law as the agent of an individual. *National State Bank* v. *Vigo County Nat. Bank* (1895), 141 Ind. 352, 355, 50 Am. St. 330; *Brooklyn Gravel Road Co.* v. *Slaughter* (1870), 33 Ind. 185. The naked act of investing the individual with the office of president gives him very little power to act for the corporation. He has no power to bind it in material matters, except as he may be authorized by law, or by the board of directors. *Louisville, etc., R. Co.* v. *McVay* (1884), 98 Ind. 391, 49 Am. Rep. 770; *National State Bank* v. *Vigo County Nat. Bank, supra. When the president and general manager does an act within the domain of the general objects or business of the corporation, and within the scope of the usual duties of the chief officer, it will be presumed that he had the authority to do it, and whoever would assert the contrary must prove it.* But when a chief or other officer performs an act, not incidental, or pertaining to the chartered business of his corporation, nor engrafted thereon by a well-established usage, it must, as a general rule, be alleged and proved that he was duly authorized by the

directors. *Louisville, etc., R. Co.* v. *McVay, supra,* and cases cited." (Our emphasis.)

We construe the underlined language as simply meaning that a corporate officer, as is true with other agents, is embellished with apparent authority.

The apparent authority of an agent is that authority which a third person reasonably believes the agent to possess because of some manifestation from his principal. *Soft Water Utilities, Inc.* v. *LeFevre* (1974), 159 Ind. App. 529, 308 N.E.2d 395; *Storm* v. *Marsischke* (1973), 159 Ind. App. 136, 304 N.E. 840. These manifestations which the principal is required to make to the third person need not be in the form of direct communications, but rather the placing of the agent in a position to perform acts or make representations which appear reasonable to a third person is a sufficient manisfestation to endow the agent with apparent authority.

Considering the dual roles of officer and director assumed by Mr. Lattomus and Mr. Hart in their relationship with Burger Man and Vesco, we feel that the trial court could have properly concluded that the statements charged to Mr. Lattomus and Mr. Hart concerning their alleged contract were made within the scope of their apparent authority. Applying the rule discussed in *Cushman, supra,* to this state of the evidence, the burden of negating this apparent authority rested on Vesco and Burger Man.

Failing to successfully meet this burden, we feel that the trial court did not commit reversible error by allowing Mr. Heinrichs' testimony to be admitted over Vesco and Burger Man's objection that it was hearsay.

We have examined the other arguments made by Vesco and Burger Man under this assignment of error and find no error committed by the trial court.

ISSUES TWO, THREE and SEVEN:

Vesco and Burger Man contend that the trial court erred by denying their motion for an involuntary dismissal following the close of Jordan's case-in-chief.[2]

The record before us discloses that following the denial of their motion for involuntary dismissal Vesco and Burger Man proceeded to present their evidence. Therefore, the error, if any, which was committed by the trial court's denial of their motion is waived. *Hoosier Insurance Co.* v. *Ogle* (1971), 150 Ind. App. 590, 276 N.E.2d 876, 877-878.

Vesco and Burger Man next argue that there is insufficient evidence to support the trial court's judgment in favor of Jordan. As to Burger Man, they allege in particular that there was an insufficient showing that a contract existed between the parties, and the damages which Jordan allegedly sustained because of the breach. As to Vesco, they argue that the evidence did not warrant holding it, the parent corporation, liable for the debts of its subsidiary—Burger Man. All of this it is contended makes the judgment of the trial court contrary to law.

When a judgment is challenged as being contrary to law this court must affirm the judgment of the trial court unless the evidence is without conflict and leads to only one conclusion and the trial court has arrived at a different conclusion. *Marshall* v. *Ahrendt* (1975), 165 Ind. App. 359, 332 N.E.2d 223. When a judgment is challenged as not being supported by sufficient evidence this court will not weigh the evidence, nor judge the credibility of witnesses, but if there is substantial evidence to support the judgment of the trial court it will be affirmed. *Lou Leventhal Auto Co., Inc.* v. *Munns* (1975), 164 Ind. App. 368, 328 N.E.2d 734, 738.

2. Ind. Rules of Procedure, Trial Rule 41(B).

The record reveals the evidence most favorable to Jordan to be as follows:.

"Q. Did there come a time when you talked with him concerning sale of—selling product to Burger Man, Inc.?

A. Yes, in the early months of 1970.

Q. Was this one period or series of conversations?

A. We had a number of talks regarding his business and that we would like to sell him.

Q. And would you recall the substance of those negotiations as best you can?

A. Yes, he was unhappy with a source out of Chicago. He was not getting his deliveries on time; he was not getting the special merchandise that he asked for. He found that he was having to do a lot of storing of his goods and he was looking for a local source at that time in those periods, and he finally told us that he would like to buy from us.

* * *

Q. And what was your agreement with him at that time?

A. There were a number of agreements. We set a date that we would try to—he told me to purchase his special merchandise from Dean's Foods or Prade Products from Chicago was presently supplying us. That we would take this inventory to warehouses in our location, he gave us the figures of what they had up there. He told us to proceed in purchasing the necessary requirements for them and special printed merchandise. He was unhappy with the fact that they did not have—they were not keeping enough in stock for him.

* * *

Q. Now then was the conversation between you and Mr. Lattomus concerning payment of your charges?

A. Yes.

Q. All right, how was that arranged and what was the conversation with him.

Q. Well, they would phone in their orders on a Thursday or Friday for the next week delivery. Their accounting period is varied somewhat to the calendar month, but at the end of their particular accounting period we would get a check and it normally ranged around the first of the month."

Jordan also had admitted certain documentary evidence which reinforced the existence of an oral contract with Burger Man. The record also reveals testimony from Mr. Heinrichs that Burger Man owes Jordan a total of $22,089.43 for paper products because of their contract with Burger Man.

On this state of the evidence, we are of the opinion that the trial court's judgment was sustained by sufficient evidence of probative value and is not contrary to law.

Appellants contend that assuming arguendo the evidence is sufficient to warrant a judgment against Burger Man, it is nonetheless insufficient to warrant a judgment against Vesco.

The record discloses that Burger Man is a wholly owned subsidiary of Vesco. At the time that this disputed contract was first formulated, Mr. Lattomus was on the Board of Directors of Vesco and Burger Man, and he was the president of Burger Man. The three Burger Man directors were also among the six Vesco directors. Mr. Lattomus told Mr. Heinrichs that Vesco was sound financially and would stand behind any debts incurred by Burger Man. The trial court could have found that Mr. Hart, a director for both Vesco and Burger Man, promised Mr. Heinrichs that Vesco would stand behind Burger Man's obligations. The record discloses that Burger Man conveyed to Vesco some of its real estate on May 31, 1973, and June 6, 1973, shortly before this action was commenced. The dominion of Vesco over the affairs of Burger Man is reflected further by the following testimony of Donald Goebert, who was the president and on the board of directors of both Vesco and Burger Man at the time this suit was commenced:

"Q. Did you represent Vesco in determining the amount of consideration for the Deed in Defendants' Exhibit #7?

A. Yes, you could say so.

Q. And who represented the negotations in determining the consideration for and on behalf of Burger Man in

the real estate that is represented in Defendants' Exhibit #7? You?

A. Yes, you could say so."

The case of *Clarke Auto Co., Inc.* v. *Fyffe* (1954), 124 Ind. App. 222, at 227 and 228, 116 N.E.2d 532, states the general rule followed in this jurisdiction when a court is asked to "pierce the corporate veil" and hold a parent corporation liable for the debts of its subsidiary:

> " 'This court has recognized that there are cases where, to prevent fraud or injustice, it is necessary to disregard the fiction of distinct corporate existence, and to hold as a matter of equity that such separate legal entity does not exist. *Feucht* v. *Real Silk Hosiery Mills, Inc.* (1938), 105 Ind. App. 405, 12 N.E.2d 1019. But in cases involving the rights of third persons, this doctrine has been limited in its application *to the prevention of fraud and injustice.*' (Our emphasis.).

> In the *Feucht* case, *supra,* this court said:

> 'It is also recognized in principle that the fiction of corporate entity may be disregarded where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation. *Trustees System Co., of Pennsylvania* v. *Payne* (1933), 65 Fed. Rep. 2d 103'."

This case clearly demonstrates that there is no one talismanic factor that a court can find to exist which will with impunity justify it in piercing the corporate veil and holding a parent company liable for the debts of its subsidiary. Rather, it is only upon a careful review of the entire relationship between parent and subsidiary that the corporate veil can properly be pierced.

Mindful of our standard of review as set forth in *Marshall* and *Munns, supra,* we feel that the record discloses substantial evidence to justify the trial court in piercing Vescos' corporate veil and charging it with the debts incurred by its subsidiary—Burger Man.

ISSUE FOUR:

Appellants next contend that the trial court failed to obtain proper jurisdiction over them, service of process being insufficient.

As to appellant, Burger Man, the record discloses that the summons and complaint were served upon Mr. Hart, who was the vice-president of Burger Man.

It is argued that service upon Mr. Hart was insufficient because Richard J. Zabel was the resident agent of Burger Man and it was he who should properly have been served.

We find no merit in this argument. Ind. Rules of Procedure, Trial Rule 4.6(A) provides:

"Service upon an organization may be made as follows:

(1) in the case of a domestic or foreign organization upon an executive officer thereof, *or* if there is an agent appointed or deemed by law to have been appointed to receive service, then upon such agent;
\* \* \*" (Our Emphasis.)

This rule has been construed as affording a litigant an option in an action against a corporation to serve process upon either an executive officer or agent thereof who has been appointed to receive service. TR. 83(2) defines executive officer as follows:

". . . 'Executive officer' of an organization includes the president, vice president, secretary, treasurer, cashier, director, chairman of the board of directors, or trustees, office manager, plant manager, or subdivision manager, partner, or majority shareholder. . . ."

Therefore, since the record clearly demonstrates that Mr. Hart was an executive officer of Burger Man service of process was properly made upon him. 1 Harvey, *Indiana Practice,* p. 370.

Vesco argues that since it was a foreign corporation, and that since this action did not arise from any of the jurisdictional acts specifically enumerated in TR. 4.4, that the trial

court was without in personam jurisdiction to render a binding judgment against it.

Without reaching the merits of Vesco's argument, we find that its defense of lack of jurisdiction over the person has been waived.

TR. 12(B) affords to the Indiana pleader an option to raise the following defenses by motion before filing an answer to a complaint:

> "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required; except that at the option of the pleader, the following defenses may be made by motion:
> (1) Lack of jurisdiction over the subject-matter,
> (2) Lack of jurisdiction over the person,
> (3) Improper venue,
> (4) Insufficiency of process,
> (5) Insufficiency of service of process,
> (6) Failure to state a claim upon which relief can be granted, which shall include failure to name the real party in interest under Rule 17,
> (7) Failure to join a party needed for just adjudication under Rule 19,
> (8) The same action pending in another state court of this state. . . ."

However, in order to prevent dilatory motion practice from developing, TR. 12(G) requires the pleader to join all defenses which are permitted to be raised by motion and are available to the pleader in his initial motion. Failure to do so will constitute a waiver except as provided in TR. 12(H)(2). Lack of jurisdiction over the person is not one of the non-waivable defenses listed in TR. 12(H)(2).

The record discloses that on June 27, 1974, Vesco filed a Motion to Dismiss for failure to state a claim pursuant to TR. 12(B)(6). They did not include therein that the trial court lacked jurisdiction over their person as TR. 12(G) required them to do. Therefore, pursuant

to TR. 12(H), Vesco has waived any issue relating to the trial court's alleged lack of jurisdiction over them.

ISSUE FIVE:

Vesco and Burger Man next contend that the contract was unenforceable because it violated the Statute of Frauds.

IC 1971, 26-1-2-201 (Burns Code Ed.) provides *inter-alia:*

"(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(2) . . .

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

(c) with respect to goods for which payment has been made and accepted or which have been received and accepted . . ." (Citation omitted.)

The record discloses testimony from Mr. Heinrichs relating to exhibits which Jordan introduced into evidence as to the quantity and price of goods which had been either manufactured, stored or shipped to Burger Man on account of their contract with Jordan. It is to be remembered that these goods

were all special print merchandise, which is to say goods which in some way identified Burger Man. There was further testimony relating to delivery slips which as stated by Mr. Heinrichs "represented merchandise delivered to the various Burger Man stores and not paid for."

We find that there was competent evidence from which the trial court could have found that these specially printed goods all fell within the exceptions to the Statute of Frauds found in IC 1971, 26-1-2-201(3)(a) and (c) (Burns Code Ed.), *supra*.

Vesco and Burger Man's argument that the contract is unenforceable because its performance cannot be completed within one year, IC 1971, 32-2-1-1 (Burns Code Ed.) is waived because of their failure to include this argument in the argument section of their brief. *Foster* v. *State* (1974), 262 Ind. 567, 320 N.E.2d 745; *Loza* v. *State* (1975), 263 Ind. 124, 325 N.E.2d 173.

ISSUE SIX:

Vesco and Burger Man finally contend that the trial court erred by not granting them a new trial upon the grounds of newly discovered evidence.

The record reveals that appellants persuaded Mr. Lattomus to return from Mexico long enough to sign an affidavit which was marked Exhibit A and attached to their Motion to Correct Errors. The appellants contend that because Mr. Lattomus denies many statements attributed to him by Mr. Heinrichs during his direct examination, it was error for the trial court not to grant them a new trial.

We cannot agree with appellants' argument. Newly discovered evidence will not serve as a basis for a new trial unless it is material, non-cumulative, unavailable to the movant prior to trial and it is of such a nature that it would probably have caused a different result in the verdict. *Austin* v. *Durbin* (1974), 160 Ind. App. 180, 310

N.E.2d 893; *Trout* v. *Summit Lawn Cemetery Assn., Inc.* (1974), 160 Ind. App. 552, 312 N.E.2d 498. Also, it has been recognized that the newly proferred evidence must be more than simply impeaching in character. *Kelly* v. *Bunch* (1972), 153 Ind. App. 407, 287 N.E.2d 586, 589.

The evidence sought to be introduced was concededly to show only a contradiction in Mr. Heinrichs' testimony. We are therefore of the opinion that the trial court did not abuse its discretion in denying Vesco and Burger Man's Motion to Correct Errors on the ground of newly discovered evidence.

We have examined Vesco and Burger Man's further assignments of error, including Jordan's alleged failure to mitigate damages, the failure of the trial court to grant a new trial because of surprise, and the argument that the attachment bond should have been forfeited to Vesco, and find that they are without merit.

For the reasons above set forth the judgment of the trial court is in all things affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 352 N.E.2d 821.