IN re The Mental Commitment of Sheila KIRKLAND, Appellant.

No. 2-1180A372.

Court of Appeals of Indiana, Fourth District.

June 1, 1981.

Stephen Speicher, Legal Services Organization of Indiana, Inc., Muncie, Kenneth J. Falk, Legal Services Organization of Indiana, Inc., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen G. Lucas, Deputy Atty. Gen., Indianapolis, for appellee.

CHIPMAN, Judge.

This appeal arises from the denial of appellant Sheila Kirkland's Trial Rule 60(B)(6) motion to set aside various civil commitment orders entered by the Delaware Circuit Court. Kirkland challenges many of the procedures which led to her involuntary commitment to the Richmond State Hospital in 1977. Although we find several procedural irregularities occurred during the 1977 commitment proceedings, we affirm the trial court's most recent commitment order of May 22, 1980.

This commitment proceeding began May 17, 1977, when Wardell Kirkland, appellant's father, filed with the trial court an affidavit alleging Sheila was "suffering from a mental illness" and that "her being at large . . . [was] dangerous to the community." Acting on this affidavit alone, the trial court issued a bench warrant for Sheila's arrest. She was arrested the same day and detained in the Delaware County Jail.

can not be provided when both spouses are incapacitated. Having held contrary to his assertions, his argument must fail.

On May 18, 1977, Sheila's father filed a petition for involuntary commitment which was accompanied by a physician's statement. A hearing on the petition was set for May 20th. No one appeared at the May 20 "hearing", and Kirkland was ordered committed to the Richmond State Hospital for a period not to exceed 90 days.

On August 1, 1977, the hospital filed a report with the trial court requesting an extension of Kirkland's temporary commitment. Ind.Code 16–14–9.1–9(i). The report was accompanied by a physician's statement, and a hearing on the extension was scheduled for August 10th. No one appeared in person or by counsel at the August 10, 1977, extension "hearing." The court ordered Kirkland's temporary commitment extended for another period not to exceed 90 days.

On October 25, 1977, the hospital filed a petition requesting that Kirkland's commitment be changed from a temporary to a regular, indefinite confinement. A hearing on this petition was set for November 23, 1977. Again, no one appeared at the November 23 regular commitment "hearing" and the trial court ordered Kirkland committed to the Richmond State Hospital on a regular basis.

Finally on May 7, 1980, the trial court appointed counsel to represent Ms. Kirkland. She promptly requested and was granted a hearing to review her regular commitment. Kirkland appeared at this hearing in person and by counsel. Evidence was heard, and on May 22, 1980, the trial court ordered Kirkland's regular commitment continued.

The next day appellant filed a Trial Rule 60(B)(6) motion to vacate all commitment orders entered against her, alleging violations of her statutory and constitutional rights. The lower court denied Kirkland's T.R. 60 motion and subsequently overruled her motion to correct error. This appeal follows.

Appellant raises four issues for our consideration:

1) Whether the trial court's temporary and regular commitment orders are void because Kirkland was denied her right to appointed counsel in violation of Indiana law and the 14th Amendment to the U. S. Constitution,

2) Whether the trial court's order of May 20, 1977, is void because the court lacked personal jurisdiction,

3) Whether the trial court's order of May 20, 1977, is void because Kirkland was not provided with adequate notice and an opportunity to prepare for her commitment hearing, and

4) Whether the trial court's order of November 23, 1977, is void because the court lacked personal jurisdiction.

Appellants requests that we vacate *all* commitment orders entered in this matter and order her release from the custody of the Richmond State Hospital.

■ It is the State's position that the issues raised by the appellant are moot. This is so, argues the State, because Sheila Kirkland was represented by counsel at the May 22, 1980 commitment review hearing, and she does not seek to challenge the sufficiency of the evidence which led the trial court to order her regular commitment continued. In response, appellant claims the May 1980 review hearing cannot serve as an independent basis for her continued commitment—that a review hearing is not a separate proceeding, but instead presupposes the existence of a *valid* regular commitment procedure. In short, Kirkland argues that because the 1977 temporary and regular commitment orders are void, any subsequent commitment review proceeding must also be void.

Ind.Code 16–14–9.1–10(e) provides that at least annually, a trial court which has ordered a regular involuntary commitment must receive a report from the appropriate facility or attending physician on the patient's care and treatment. The report must tell the court whether the patient remains gravely disabled or dangerous and whether the patient needs to remain in the facility where he or she is confined. The court must then either order the individual's regular commitment continued or ter-

minated. Upon receiving a copy of the court's order, the patient may request a hearing to review or dismiss the commitment. Ind.Code 16–14–9.1–10(g).

It is quite true, as appellant Kirkland argues, that this commitment review procedure presupposes the existence of a valid regular commitment. The hearing is, by statutory scheme, a proceeding to *review* a regular involuntary commitment. However, we disagree with Kirkland's assertion that the May 1980 commitment review hearing cannot serve as the basis for her present involuntary confinement. First, we note the subject of the trial court's inquiry at a commitment review hearing is the same as that at a regular commitment hearing; the question in both proceedings is whether the individual is mentally ill and either dangerous or gravely disabled. Furthermore, IC 16–14–9.1–10(g) states that a patient's rights and other hearing procedures in a commitment review hearing are the same as those which must be observed in a temporary or regular commitment proceeding.[1] Accordingly, at appellant Kirkland's commitment review hearing she had the right to appear and to testify, to be represented by counsel, and to present and cross-examine witnesses. She had the right to adequate notice of the hearing date and the right to a change of judge.

While appellant questions the trial court's personal jurisdiction to enter temporary and regular commitment orders in 1977, there is no clear indication she challenged the trial court's personal jurisdiction to proceed with the May 1980 commitment review hearing. Kirkland did not petition the trial court for a writ of habeas corpus, despite the availability of that remedy. IC 16–14–9.1–14. As in other civil proceedings, failure to timely raise the question of lack of personal jurisdiction at the trial level waives the issue. See Ind.Rules of Procedure, Trial Rule 12(H); *see also Phillips v. Great Lakes Health Congress,* (1976) 170 Ind.App. 674, 354 N.E.2d 307; *Burger Man, Inc. v. Jordan Paper Products, Inc.,* (1976) 170 Ind.App. 295, 352 N.E.2d 821.

We are therefore drawn to the conclusion that regardless of the validity of the temporary and regular commitment orders entered by the trial court in 1977, Sheila Kirkland's present regular commitment must stand. The May 1980 commitment hearing, at which Kirkland was represented by counsel, was in actuality an independent determination that appellant is mentally ill and gravely disabled. Absent a challenge to the sufficiency of the evidence which led the trial court to continue Kirkland's commitment, and absent any other indication that the May 1980 hearing was tainted[2] by procedurally defective 1977 commitment proce-

---

1. Ind.Code 16–14–9.1–10(g) provides, "[p]atient rights and hearing procedures are the same as those provided in section 9 [IC 16–14–9.1–9] of this chapter." IC 16–14–9.1–9(e), which governs temporary commitment hearings, states:

   "The person alleged to be mentally ill has the following rights:

   (1) to receive adequate notice of the hearing so that he or his attorneys can prepare for the hearing;

   (2) to receive a copy of the petition or order;

   (3) to be present at the hearing, subject to the court's right to remove him if he is disruptive to the proceedings or the court's right to waive his presence at the hearing if it would be injurious to his mental health or well-being; and

   (4) to be represented by counsel."

   IC 16–14–9.1–9(d) states, "the person alleged to be mentally ill may present and cross-examine witnesses."

These same rights and procedures are applicable in regular commitment hearings. IC 16–14–9.1–10(c).

2. In a footnote, Kirkland argues that one major difference does exist between a commitment review hearing and a regular commitment hearing. Specifically, she claims at the review hearing she had the burden to prove she was no longer in need of involuntary hospitalization.

First, we find absolutely nothing in the record which shows the burden of proof shifted to Ms. Kirkland to disprove her mental illness at the commitment review hearing. Appellant has not even included a transcript of that hearing in the record of these proceedings. Furthermore, shifting the burden of proof to Ms. Kirkland at the annual review hearing would raise serious constitutional questions in light of the U. S. Supreme Court's decision in *Addington v. Texas,* (1979) 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323.

dures, this court will not order appellant's release from the custody of the Richmond State Hospital. We are compelled, however, to briefly comment upon the procedures which led to appellant Kirkland's involuntary commitment in 1977.

First, the May 17, 1977, application for emergency detention filed by Sheila Kirkland's father *did not* contain the written statement of a physician as required by Ind.Code 16–14–9.1–7(a)(2).[3] Acting solely on Wardell Kirkland's affidavit, the trial court issued a bench warrant for Ms. Kirkland's arrest. Instead of being detained in a hospital or community health center as required by IC 16–14–9.1–7(a)(2), Sheila was placed in the Delaware County Jail.

Most disturbing are the "hearing" procedures which followed Ms. Kirkland's arrest. IC 16–14–9.1–7(b) requires that before the expiration of the 72 hour emergency detention period, the court must receive a report stating whether there is probable cause to believe the individual is mentally ill and either dangerous or gravely disabled and in need of continuing care and treatment. The trial court must act upon the report within 24 hours by ordering the person's release, or by ordering a *preliminary* or *final* hearing to determine whether the individual is in need of temporary commitment. IC 16–14–9.1–7(e). IC 16–14–9.1–7(e)(3) states that while a physician's statement may be introduced into evidence at a preliminary hearing without the presence of the physician,

> "no finding of probable cause may be entered at the preliminary hearing absent the oral testimony, subject to cross-examination, of at least one witness who has personally observed the behavior of the person and will testify as to facts supporting a finding that there is probable cause to believe that the person is in need of temporary commitment."

The same statutory section mandates that at a *final* hearing, "no person may be found in need of temporary commitment unless at least one physician who has personally examined the person testifies at the hearing." This expert testimony may be only *voluntarily* and *knowingly* waived.

In the present case, no oral testimony was received by the court during Ms. Kirkland's original temporary commitment hearing on May 20, 1977, during Kirkland's August 1977 commitment extension hearing, or during the November 1977 regular commitment hearing. No one appeared at any of these "hearings." There is no indication Kirkland was advised of her right to be present, to be represented by counsel, to present and cross-examine witnesses, and to testify in her own behalf. Nor is there any indication she knowingly and voluntarily waived these procedural safeguards. Kirkland was deprived of her liberty for almost three years before an evidentiary hearing finally took place in May of 1980. We also note the November 23, 1977, regular commitment "hearing" took place *after* the August 1977 90 day temporary commitment extension had expired. Ind.Code 16–14–9.-1–9(i) requires the regular commitment hearing to be held *"prior* to the end of the current [temporary] commitment period."

In *F. J. v. State,* (1980) Ind.App., 411 N.E.2d 372, this court discussed at length the statutory procedures which limit the State's power to commit an individual involuntarily to a mental health facility. Judge Miller noted the procedures are designed to "minimize the risk that any individual will be [wrongfully] deprived of his liberty." 411 N.E.2d at 377. Indeed, "the history of American freedom is, in no small measure, the history of procedure." *Malinski v. People of State of New York,* (1945) 324 U.S. 401, 414, 65 S.Ct. 781, 787, 89 L.Ed. 1029 (Frankfurter, J.) (separate opinion). Un-

---

**3.** The entire text of the application in affidavit form reads:

> "That (he or she) is a legal resident of Delaware County, Indiana and that (he or she) is aquainted with one _____ who is also a resident of Delaware County, Indiana.

> That he believes the said _____ to be suffering from a mental illness and that (his or her) being at large is dangerous to the community.
>
>                                    /s/_____"

fortunately, Sheila Kirkland's involuntary commitment in 1977 amounted to little more than a mockery of the procedural safeguards prescribed by our statute.

Affirmed.

YOUNG, P. J., and MILLER, J., concur.